[No. H001925. Sixth Dist. Aug. 4, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVE ALAN REDONDO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of subparts 1, 3, and 4 of the Discussion.

---

COUNSEL

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ann K. Jensen and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

BRAUER, J.—Appellant Steve Alan Redondo was convicted by a jury of two counts of forcible oral copulation (Pen. Code, § 288a, subd. (c))[1] and two counts of forcible lewd and lascivious conduct with a child under age 14 (§ 288, subd. (b)). The jury also found Redondo had kidnapped the victim for the purpose of committing each of these offenses (§ 667.8). He was sentenced to 25 years in state prison.

He raises five issues on appeal, each of which we find insufficient for reversal.

## FACTS

### 1. Prosecution

On the night preceding the attack, nine-year-old Mariano C. had fallen asleep near three of his older brothers in the living room of his home in San Jose. His mother, who had been watching television in the living room with her sons, retired to her room at about 4 a.m.

Mariano awoke later that morning as he was being carried across his front yard. He recognized the person carrying him as "Steve," a friend of his older brother Nestor. This person—later identified as defendant Redondo—hit Mariano in the face when Mariano looked at him. Redondo told

---

[1] Subsequent statutory references are to the Penal Code unless otherwise noted.

the boy to keep quiet. Redondo then carried Mariano across the street to a neighbor's yard about 150 feet from Mariano's home. There, Redondo removed Mariano's clothing and dropped his own pants. He then touched Mariano's penis, forced Mariano to orally copulate him, forced Mariano to masturbate him, and then forced the boy to orally copulate him a second time.[2] During the assault, Redondo threatened to kill Mariano if he identified him. The attack ended when a police car drove by and Redondo fled over a fence.

Mariano's neighbor, Aldin Barret, woke to go to work at about 4:30 a.m. on the morning of the assault. As he did so, he heard a child "whining" in a dimly lit area of his back yard. Through a rear window, Mr. Barret saw the outline of an adult and child in his back yard. The adult seemed to be whispering "suck it, suck it." After observing this, Mr. Barret called the police.

About five minutes later, Officer Tovar arrived in a patrol car. Tovar illuminated Mr. Barret's yard with a flashlight. As he did so, Mariano ran into the street. Mariano was nude, crying, dirty, bleeding from the nose and had an injured eye.

When Tovar asked Mariano who had attacked him, he answered, "I think it looks like Steve." When asked who Steve was, Mariano replied that Steve was his brother's friend. Mariano described Steve as a Mexican male wearing brown pants.

Officer Tovar took Mariano to his house, woke the household and asked if anyone had a friend named Steve. They remained at the house five or ten minutes while Mariano got dressed.

Meanwhile, San Jose Police Officer Hernandez—who had received a broadcast description of Mariano's assailant—was patrolling nearby and saw Redondo walking on the street about 600 to 800 feet from Mariano's house. The officer stopped Redondo who identified himself as "Steve Gonzales." The officer noticed Redondo had fresh blood on his fingers and knuckles. When asked about this, Redondo replied he had hurt himself while fixing his car.

Shortly thereafter, Officer Tovar brought Mariano to the corner where Redondo had been stopped. Tovar told Mariano they had stopped a man who might or might not be his attacker. Mariano sat with Officer Tovar in

---

[2] The information also charged Redondo with penetrating Mariano's anus with a foreign object and orally copulating the boy's penis. Although there was evidence to support these offenses, the jury did not reach a verdict as to these two charges.

his patrol car, about 15 feet from Redondo. After Officer Tovar asked whether this were the man, Mariano first replied tentatively that he thought so. However, after Mariano heard Redondo speak, he positively identified him, saying "that's the guy." Mariano also identified Redondo at trial.

Mariano's mother and Mariano's 21-year-old brother Nestor testified that Redondo was a friend of Nestor's who had occasionally visited their home.

Finally, the prosecution introduced plant material found in Redondo's clothes and anal area during a jail strip search.

### 2. Defense

The defense was mistaken identification. At trial, the defense impeached Mariano with his preliminary hearing testimony. During the preliminary hearing, Mariano testified on cross-examination that he identified Redondo as the attacker only after Officer Tovar directed his attention to blood stains on Redondo's shirt. In addition, on cross-examination, Officer Tovar testified he repeatedly told Mariano he had picked the right person after Mariano made his in-field identification. Finally, Mariano's brother Nestor testified Mariano had in the past mistaken Redondo for Jesse Herrera, another of Nestor's friends.

Counsel also stipulated that Redondo had a .21 blood-alcohol level at 6:10 a.m. on the morning he was arrested. An expert on the effects of intoxication testified that whether a person with this blood-alcohol level could have successfully entered Mariano's home and carried him away without waking anyone would "depend on the person."

### DISCUSSION

### 1. "Green" Error*

* See footnote, *ante,* page 647.

## 2. The Testimony of a "Support Person" Under Penal Code Section 868.5 Was Properly Admitted on Rebuttal

### a. Procedural Posture

Prior to trial, the prosecution moved pursuant to section 868.5 to have Mariano's mother present as a support person during his testimony.[4] In general, section 868.5 permits a prosecuting witness under 17 years of age to be accompanied by up to 2 support persons while the witness is testifying in certain sex offense cases. The section provides that if the support person is also a prosecution witness, his or her testimony "shall be presented before the testimony of" the child prosecuting witness and the child witness must be excluded from the courtroom during this testimony. (§ 868.5, subd. (c); *People* v. *Kabonic* (1986) 177 Cal.App.3d 487, 495 [223 Cal.Rptr. 41].)

The prosecutor planned to call Mariano's mother as a witness to describe the conditions in her home on the night of the incident. Defense counsel objected to the mother's presence as a support person, since she was a potential prosecution witness and counsel feared she would be recalled after she had been privy to her son's testimony. In addition, defense counsel speculated that she may have overheard some of the statements made by her son on the night of the incident, and that she would be an important witness with respect to those statements. However, neither counsel indicated he was aware that she had heard any of Mariano's statements. The court granted the prosecutor's motion, but ruled that the mother's testimony would have to be presented before Mariano's testimony. (§ 868.5, subd. (c).)

---

[4] At the time of Redondo's trial in 1986, section 868.5 provided: "(a) Notwithstanding any other provision of law, a prosecuting witness 16 years of age or under in a case involving a violation of Section 243.4, 261, 273a, 273d, 285, 286, 288, 288a, 289, or 647a, or a violation of subdivision (1) of Section 314, shall be entitled for support to the attendance of up to two family members of his or her own choosing, one of whom may be a witness, at the preliminary hearing and at the trial, during the testimony of the prosecuting witness. Only one of those support persons may accompany the witness to the witness stand, although the other may remain in the courtroom during the witness' testimony. The person or persons so chosen shall not be a person described in Section 1070 of the Evidence Code unless the person or persons are related to the prosecuting witness as a parent, guardian, or sibling and do not make notes during the hearing. [¶] (b) If the person or persons so chosen are also prosecuting witnesses, the prosecution shall present evidence that the person's attendance is both desired by the prosecuting witness for support and will be helpful to the prosecuting witness. Upon that showing, the court shall grant the request unless information presented by the defendant or noticed by the court establishes that the support person's attendance during the testimony of the prosecuting witness would pose a substantial risk of influencing or affecting the content of that testimony. [¶] (c) The testimony of the person or persons so chosen who are also prosecuting witnesses shall be presented before the testimony of the prosecuting witness. The prosecuting witness shall be excluded from the courtroom during that testimony. . . ." (See Stats. 1985, ch. 467, § 1, pp. 1791-1792.)

Mariano's mother testified prior to Mariano. Her testimony covered her familiarity with Redondo and the conditions in her home at the time of the incident. Neither attorney asked her questions concerning statements made by Mariano shortly after the assault.

Subsequently, after Mariano had begun testifying, his mother approached Officer Tovar during a morning recess. She told Tovar that when Mariano was brought home following the assault, he told her that "Steve" had attacked him. Mariano's mother brought this to Tovar's attention because she wished she had been questioned concerning it during her testimony.

Later that day, Officer Tovar relayed this information to the prosecutor during the noon recess. The prosecutor did not inform the defense of this new evidence before Mariano again took the stand in the afternoon session. During the afternoon session, the prosecutor sought to question Mariano concerning the identification statement he had made to his mother. The trial court sustained a hearsay objection to this question, ruling that the mother, but not Mariano, could testify to this statement.

At a subsequent hearing in which all of those involved in the discovery of this evidence testified, defense counsel argued that Mariano's mother could not be recalled because this procedure would violate section 868.5. In addition, defense counsel moved for a mistrial on the ground the prosecutor had failed to provide proper discovery of the newly discovered evidence.

The trial court held the prosecutor in contempt for failing to disclose the statement to the defense prior to asking questions concerning it, but denied the motion for mistrial and ruled that Mariano's mother could testify regarding the statement. With respect to defense counsel's argument that the recall testimony was barred by section 868.5, subdivision (c), the court expressed its belief that this section could not bar the introduction of evidence from a support person where the prosecutor became aware of that evidence only after the child witness had testified.

Mariano's mother testified on recall that shortly after the attack, she asked Mariano who had assaulted him, and he replied that Nestor's friend Steve had.

### b. Effect of Late Discovery

Redondo's primary contention is that the mother's recall testimony was barred by section 868.5, subdivision (c), which provides that the testimony of the support person "shall be presented before the testimony of the

prosecuting witness." At oral argument, however, defense counsel conceded that circumstances may arise where this subdivision should not be literally and strictly applied. We conclude that in the circumstance of this case, section 868.5, subdivision (c), does not exclude the recall testimony offered.

■ The requirement that the support person testify before and out of the presence of the victim is intended to guard against the possibility that the support person will tailor his or her testimony to match that of the complaining witness. (*People* v. *Kabonic, supra,* 177 Cal.App.3d at p. 495.) Admittedly, if a support person testifies on recall after the victim has testified, the protection afforded by section 868.5, subdivision (c), may be diminished. ■ Nevertheless, we believe a blanket rule which prevents a support person from being recalled in any circumstances after the victim has testified is a far less desirable alternative. Such a rule would keep relevant, admissible, and perhaps important evidence from the jury even where the prosecution in good faith fails to discover the evidence until after the support person and victim have testified. In such circumstances, the marginal benefit gained by preventing a support person from testifying on recall after the victim has testified is vastly outweighed by the cost of keeping admissible evidence from the jury.

Our conclusion that section 868.5 should not bar evidence discovered after the victim has begun to testify finds support in cases dealing with an analogous situation. ■ The courts of this state have consistently held that the violation of a witness exclusion order (§ 867; Evid. Code, § 777) does not render the witness incompetent to testify, and does not furnish grounds to refuse permission to testify, at least where the party who seeks to offer the testimony was not "at fault" in causing the witness's violation of the exclusion order. (*People* v. *Boscovitch* (1862) 20 Cal. 436; *People* v. *Valdez* (1986) 177 Cal.App.3d 680, 692-695 [223 Cal.Rptr. 149]; *People* v. *Willingham* (1969) 271 Cal.App.2d 562, 571 [76 Cal.Rptr. 760]; *People* v. *Tanner* (1946) 77 Cal.App.2d 181, 187 [175 P.2d 26].) In our view, a similar rule should apply when the prosecution seeks to recall a support person to present evidence discovered after the prosecuting witness has begun to testify.

■ In sum, we conclude section 868.5, subdivision (c), does not prevent a support person from being recalled to testify as to evidence which the prosecution, acting in good faith, fails to discover until after the victim has begun to testify.

Applying this rule in the present case, it is clear the mother's recall testimony was properly admitted. The evidence establishes that the prosecution did not learn of the evidence until after Mariano had begun to testify.

The manner in which the evidence came to light indicates the prosecution was acting in good faith, and the trial court found, at least implicitly, that this was so. There was no error.

■ Finally, Redondo contends the trial court "abdicated its responsibility when it determined it was not allowed to make credibility determinations in the process of determining whether [Mariano's mother] should be recalled." In our view, the only factual matter the trial court was obliged or entitled to rule on was whether the prosecution actually discovered the evidence after Mariano began testifying and did so in good faith. The trial court made such a determination, at least implicitly. Questions regarding the mother's credibility were for the trier of fact, not the court.

3., 4.*

. . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Agliano, P. J., and Capaccioli, J., concurred.

A petition for a rehearing was denied September 2, 1988, and appellant's petition for review by the Supreme Court was denied November 23, 1988.

---

*See footnote, *ante,* page 647.