[No. F015537. Fifth Dist. Oct. 1, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD RAY PATTEN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through VII.

**COUNSEL**

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Edgar A. Kerry, Rosendo Peña and Jane Olmos, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

VARTABEDIAN, J.—Defendant, Richard Ray Patten, was convicted following a jury trial of six counts of forcible rape (Pen. Code, § 261, subd. (2)) and two counts of oral copulation by force (Pen. Code, § 288a, subd. (c)), all involving the same victim. Defendant appeals, questioning both the use of support persons when the victim testified and the propriety of the procedure utilized by the trial court when it substituted an alternate juror during deliberations. Additionally, defendant claims the trial court committed errors in instructing the jury and in denying his motion for new trial. Our published discussion is limited to the issue of use of support persons under Penal Code section 868.5. We affirm.

### FACTS

On September 10, 1990, Kathy N. went to a lake picnic area for a barbecue. She stepped on a nail while she was there. When she got home, she cleaned her wound and put a bandage on it. That evening she stayed at home and watched television. She went to bed with her three-year-old daughter. Her 18-year-old daughter was in her own room watching television with her boyfriend. Her husband was out of town.

About 11:30 p.m. Kathy heard a knock on the door. She got up to answer the door. She was barefoot and had a robe and a nightgown on. Before she reached the door, defendant opened it and entered the house. Kathy recognized defendant, having met him through mutual friends. He had been to her home on a previous occasion.

Kathy asked defendant what he was doing in her home. Defendant said he wanted to talk, and Kathy told him to leave. Defendant said he had heard that Kathy had told someone he had been making passes at her. Kathy said she had not. Defendant put his hand over Kathy's mouth and said, "If I'm going to be accused of rape, then, by God, I'm going to be guilty of it."

A struggle ensued. Defendant picked Kathy up and carried her to his truck. He put her in the truck, grabbed her hair and pulled her down. He drove off, stopping when he reached the Friant-Kern canal.

Kathy begged to be taken home, but defendant said she was going to pay for what she said. Defendant attacked Kathy, forced her legs apart, and raped her. Kathy struggled with defendant. On at least five or six occasions during the struggle, defendant lost penetration of Kathy's vagina with his penis, only to penetrate again. After the initial rapes, defendant pulled Kathy's head to his penis and forced her to engage in an act of oral copulation. Kathy got sick, but defendant forced her to continue. Defendant then raped Kathy again. Defendant also put his mouth on Kathy's vaginal area during this initial assault.

Next, Kathy requested to go to the bathroom. Defendant let her out of the truck but would not leave her alone. Outside of the truck, he made an unsuccessful attempt to assault Kathy from behind.[1] Defendant got in the truck, pulled Kathy's head down, and again forced Kathy to engage in an act of oral copulation. Kathy got back in the truck and "the things kept repeating." Defendant threatened to throw Kathy in the canal.

Defendant and Kathy left this location in defendant's truck at approximately 3:32 a.m. Kathy promised defendant she would not report the rape. Defendant said she would be sorry if she did. Defendant also threatened to rape Kathy's 18-year-old daughter and then her 3-year-old daughter. On the return drive, Kathy tried to jump out of the truck. She was unsuccessful in her escape attempt. Defendant then drove to another area and resumed his attack. He held Kathy down by the throat and he raped her at least twice. Defendant also forced Kathy to engage in an act of oral copulation. Kathy again begged defendant to take her home. Kathy promised she would not report the attack. At approximately 4 a.m., when defendant got close to Kathy's house, Kathy jumped out of the car and ran home. Defendant left; Kathy did not report the assault to the police.

Kathy's sister, Karen, called Kathy at 8:30 a.m. on September 11. When Kathy answered, Karen immediately knew something was wrong with Kathy. Kathy would not tell Karen what was wrong until Karen demanded to know. Kathy said she had been raped by defendant.

Karen went to Kathy's home and told Kathy to call the police. Kathy said she would not call the police because defendant threatened her. Karen called the police. Kathy was visibly shaking and on the verge of hysterics.

Kathy had bruises on her rib and waist areas. She had a cut on the bottom of her foot. She had red marks on her arm, waist and thighs and scratch marks on her neck. Her throat was swollen.

[1]Defendant was acquitted of attempted sodomy.

Police Officer Ralph Edwards went to the scene of the crime. The tread marks at the two crime areas had the same general characteristics as the tread on defendant's truck tires. The tennis shoe tracks were the same design, size and shape as defendant's shoes. There were imprints from bare feet at the crime scene and one had the imprint of a bandage. The hair fibers from the seat of defendant's truck matched Kathy's. The seminal stain on Kathy's bathrobe matched defendant's fluid type and appears in 14 percent of the male population. The seminal stain could not have been produced by Kathy's husband.

After he was arrested, defendant agreed to talk to Officer Edwards. Defendant was informed of the charges and was questioned whether he knew Kathy. Defendant said he did not know her; he then said he did recall someone by that name. Defendant told Officer Edwards Kathy had never been in his truck and he had never had sex with her, either forcible or consensual. When defendant was shown the shoe and tire prints from the crime scene, he stated he had been there previously with another friend.

*Defense*

Defendant testified on his own behalf. He met Kathy in July of 1990. There was a little bit of flirtation going on between them. Kathy said she was getting a divorce.

Defendant testified he left a bar shortly after 1 a.m. on September 11, 1990. Kathy was in the parking lot. She asked defendant if he wanted to share some cocaine. Defendant agreed. Defendant followed Kathy to her house. Kathy handed the cocaine to defendant and said she had to go inside and check on her children. When Kathy returned to defendant's truck, she was dressed in a robe. She told defendant they could not stay at the house to use the cocaine because her children were there.

Kathy and defendant drove to the canal. They both used the cocaine and they both walked around outside the truck. As they were about to leave, Kathy suggested they "have some fun." They drove to another location and attempted to have consensual sex; defendant was having difficulty in becoming aroused. In an effort to arouse defendant, Kathy orally copulated him twice; the second time he became "maybe half aroused" after several minutes. Defendant was unable to get an erection because he had used the cocaine. Defendant drove Kathy home. Kathy suggested they obtain more cocaine. Defendant refused, and Kathy got angry. Kathy was nervous when defendant dropped her off because there was a car in her driveway and she thought her husband might have caught her going out.

Defendant testified he lied to the police because he wanted to tell his wife what occurred before he told anyone else.

Kathy Torres, defendant's sister, and Josie Morriss, defendant's sister-in-law, each testified that Kathy N. had a reputation for dishonesty.

DISCUSSION

I.

*Presence of Support Persons*

Prior to the victim's testimony, the People requested that she be allowed to have two support persons with her as she testified. Defendant objected based on the victim's "age and everything else." The trial court interrupted defense counsel's elaboration of the objection, questioning whether age was a factor. The People commented that the code section was not age specific, but the application of the section allowing support persons was dependent upon the victim's desire and needs. The People offered to ask the victim questions along these lines. The court did not think it was necessary to question the victim. The defense then interjected that the People should be required to have the support person, who was also a witness, testify before the victim testified. The People indicated that one support person was also a witness. The trial court agreed that this support person (Kathy's sister, Karen) should testify first. The People requested that the victim state on the record that she needed the presence of these two persons as support. To this, Kathy stated, "I would appreciate it."

Kathy's sister Karen testified first. Then Kathy testified.

The jury was not informed regarding the presence of the two support persons. The record does not reflect where the support persons were situated during Kathy's testimony. Defense counsel did remark in closing argument, "She, you know, she felt that emotion and you, me, I feel it's difficult for you being surrounded by, you know, two crying females to not have your sympathy out to them. It's very powerful." However, this statement is imprecise. It does little to identify the "two crying females"; one may have been the victim herself and there may have been others seated in the audience area outwardly expressing their emotions. Nor is any location of the support persons revealed. Moreover, this comment was pure argument; at no point did defendant ask the record to reflect any location or conduct of the support persons.

Penal Code section 868.5 entitles the victim of certain crimes to the presence of two support persons. It provides in pertinent part:

"(a) Notwithstanding any other provision of law, a prosecuting witness in a case involving a violation of Section . . . 261 . . . [or] . . . 288a . . . shall be entitled, for support, to the attendance of up to two persons of his or her own choosing, one of whom may be a witness, at the preliminary hearing and at the trial, or at a juvenile court proceeding, during the testimony of the prosecuting witness. Only one of those support persons may accompany the witness to the witness stand, although the other may remain in the courtroom during the witness' testimony. . . .

"(b) If the person or persons so chosen are also prosecuting witnesses, the prosecution shall present evidence that the person's attendance is both desired by the prosecuting witness for support and will be helpful to the prosecuting witness. Upon that showing, the court shall grant the request unless information presented by the defendant or noticed by the court establishes that the support person's attendance during the testimony of the prosecuting witness would pose a substantial risk of influencing or affecting the content of that testimony. . . . In all cases, the judge shall admonish the support person or persons to not prompt, sway, or influence the witness in any way. Nothing in this section shall preclude a court from exercising its discretion to remove a person from the courtroom whom it believes is prompting, swaying, or influencing the witness.

"(c) The testimony of the person or persons so chosen who are also prosecuting witnesses shall be presented before the testimony of the prosecuting witness. The prosecuting witness shall be excluded from the courtroom during that testimony. Whenever the evidence given by that person or those persons would be subject to exclusion because it has been given before the corpus delicti has been established, the evidence shall be admitted subject to the court's or the defendant's motion to strike that evidence from the record if the corpus delicti is not later established by the testimony of the prosecuting witness."

█ Defendant asserts that the procedure providing support persons under Penal Code section 868.5 is inherently prejudicial. He contends a case-specific showing that the support persons serve an essential state interest is necessary because the presence of support persons encroaches upon his fundamental right to a fair trial. Because this section does not have such a case-specific requirement, defendant argues it violates the federal Constitution. Utilization of this procedure without a case-specific inquiry, claims defendant, renders the procedure itself unconstitutional. Defendant contends the presence of support persons "unfairly clothes the complaining witness in a mantle of veracity" and also informs the jury that the victim is so psychologically and emotionally shattered that she cannot testify without

assistance. Defendant further argues that he is hampered in his defense when the support person is a prosecution witness.

California is one of a number of states which has implemented statutes or procedures that allow a person to be present to render support to particular witnesses during their testimony. These procedures normally are focused on the young witness or the witness who is the victim of a sexual offense. The common reasons advanced for the procedure are to allow the witness to more easily come forward and to reduce the psychological harm and trauma the witness might experience. (Annot., Person Accompanying Witness (1990) 82 A.L.R.4th 1038.) The state's interest in safeguarding the physical and psychological well-being of a minor or victim of sexual abuse can be a compelling one. (See *Globe Newspaper Co.* v. *Superior Court* (1982) 457 U.S. 596, 607 [73 L.Ed.2d 248, 257-258, 102 S.Ct. 2613]; *id.*, dis. opn. of Burger, C. J., at pp. 618-619 [73 L.Ed.2d at pp. 264-265].)

Although the state may have a compelling interest in protecting the well-being of certain witnesses, the protections given must be balanced against opposing considerations affecting the defendant. Opposing considerations offered by defendant include (1) the potential of influencing the jury with a subconscious message that the victim is traumatized and therefore it is more likely the sexual assault occurred, and (2) the concern that the presence of a person supporting the witness may add credibility to the witness's testimony—i.e., the support person is vouching for the credibility of the witness.

In *Globe Newspaper Co.* v. *Superior Court, supra,* 457 U.S. 596, the state statute provided for the exclusion of the press and general public when a minor victim of certain sex offenses testified. The press challenged the exclusion. The United States Supreme Court found that mandatory closure violates the First Amendment. (*Id.* at p. 601 [73 L.Ed.2d at pp. 253-254].) The court stated that there should be a case-by-case review because "circumstances of the particular case may affect the significance of the interest." (*Id.* at p. 608 [73 L.Ed.2d at p. 258].)

The United States Supreme Court utilized a case-by-case approach again in *Coy* v. *Iowa* (1988) 487 U.S. 1012 [101 L.Ed.2d 857, 108 S.Ct. 2798]. In *Coy*, the Iowa statute allowed a minor victim to testify via closed-circuit television or behind a screen. (*Id.* at p. 1014 [101 L.Ed.2d at pp. 862-863].) Defendant challenged the procedure as a violation of due process and a violation of his right to confrontation. (*Id.* at p. 1015 [101 L.Ed.2d at p. 863].) The Supreme Court held that a Legislature-created exception was not enough to justify violating the face-to-face element of the confrontation

clause. The court held that to justify such a procedure there must be more than a generalized finding. The trial court must make individualized findings that the witness needs special protection. (*Id.* at p. 1021 [101 L.Ed.2d at p. 867].)

The issue was revisited by the United States Supreme Court in *Maryland v. Craig* (1990) 497 U.S. 836 [111 L.Ed.2d 666, 110 S.Ct. 3157]. In *Craig*, the trial court utilized the statutory procedure that permitted a child witness who was a victim of child abuse to testify by one-way, closed-circuit television. The defendant asserted the confrontation clause of the Sixth Amendment prohibited such a procedure. (497 U.S. at p. 842 [111 L.Ed.2d at pp. 675-676].) The Supreme Court found the procedure should not be categorically prohibited because the confrontation clause does not require face-to-face confrontation but merely reflects a preference for face-to-face confrontation. (497 U.S. at p. 849 [111 L.Ed.2d at pp. 680-681].) Although face-to-face confrontation is not an absolute requirement of the confrontation clause, it may not easily be dispensed with (497 U.S. at p. 850 [111 L.Ed.2d at pp. 681-682]) and may be abridged only where there is a case-specific finding of necessity.

In each of the above three cases, the mere utilization of the procedure infringed upon a constitutional right. Such cannot be said of the statute here.[2] Penal Code section 868.5 allows the presence of up to two support persons during the testimony of the prosecuting witness. The statute clearly encompasses circumstances when the support persons are present in the audience section of the courtroom and without having any particular attention drawn to them. Such a procedure would result in minimal, if any, influence on a jury and would not rise to a level of possible infringement on the constitutional guarantee of due process. Thus, under the California statute, the absence of a requirement of a case-specific showing of necessity does not, as defendant argues, make this statute unconstitutional per se. This is so because procedures available to utilize support persons pursuant to the statute would not infringe any constitutional rights.

Next we turn our attention to whether the specific circumstances of the instant case required a showing of necessity, even if not required by the statute. This court discussed the application of Penal Code section 868.5 in *People v. Kabonic* (1986) 177 Cal.App.3d 487 [223 Cal.Rptr. 41]. In *Kabonic*, the defendant challenged the use of the victim's mother as a support

---

[2]We note that the Supreme Court did not conclude, in any of the three cited cases, that the particular statutory procedures there were inherently lacking in due process. Clearly the statute here involves even a smaller probability of prejudice and is therefore not inherently prejudicial.

person when the mother was also a witness. In addition, the defendant challenged the prosecution's failure to file a notice of motion that the attendance of the mother (a prosecuting witness) as a support person was desired by the victim-witness and would be helpful to the victim.[3] The *Kabonic* court found that it was error to not comply with the notice requirements. Defendant argued he was prejudiced because he was hampered by the inability to present evidence that the victim's mother would pose a substantial risk of influencing the victim's testimony. (177 Cal.App.3d at pp. 493-497.) The court disagreed, finding the error to be harmless and not of constitutional dimensions.

"As to the issue of prejudice, appellant's position is weakened by these points: (1) The failure to make the barest offer of proof in the trial court below regarding proposed evidence of the substantial risk of improper influence posed by Renee's mother; (2) the lack of any indication in the record that the presence of Renee's mother actually influenced or affected the content of Renee's testimony; (3) the fact the trial court did not, at any time during Renee's testimony, deem the presence of Renee's mother improper within the meaning of section 868.5; and (4) the failure of appellant to point to any evidence of improper influence in the record or otherwise to refer to any evidence on appeal which might support the position that the presence of Renee's mother posed a substantial risk, or in fact influenced or affected the content of Renee's testimony." (*People* v. *Kabonic, supra,* 177 Cal.App.3d at p. 498.)

Here, as in *Kabonic,* there is no evidence in the record to support a finding that the support person, who was also a witness, posed a substantial risk of influencing or affecting the content of Kathy's testimony or in fact did so. To the extent defendant asserts such influence, his argument fails.

Although *Kabonic* disposes of the question of any influence the support person may have on the testifying victim, the focus of defendant's argument here is the influence the support person has on the jury. *Kabonic* does not discuss this facet.

In *People* v. *Redondo* (1988) 203 Cal.App.3d 647 [250 Cal.Rptr. 46], the victim's mother was utilized as a support person. Because the mother was also a prosecuting witness, she was required to testify prior to being utilized as a support person. After the mother testified and while acting as a support

---

[3]Penal Code section 868.5 no longer requires a notice of motion as was the case in *Kabonic.* Presently, if a support person is also a prosecution witness, the statute does require the prosecution to "present evidence that the person's attendance is both desired by the prosecuting witness for support and will be helpful to the prosecuting witness."

person, she recalled something which she brought to the attention of the People. Over defendant's objection she was recalled to testify. On appeal, defendant asserted the mother's recall testimony was barred by Penal Code section 868.5. The appellate court disagreed:

"The requirement that the support person testify before and out of the presence of the victim is intended to guard against the possibility that the support person will tailor his or her testimony to match that of the complaining witness. [Citation.] Admittedly, if a support person testifies on recall after the victim has testified, the protection afforded by section 868.5, subdivision (c), may be diminished. Nevertheless, we believe a blanket rule which prevents a support person from being recalled in any circumstances after the victim has testified is a far less desirable alternative. Such a rule would keep relevant, admissible, and perhaps important evidence from the jury even where the prosecution in good faith fails to discover the evidence until after the support person and victim have testified. In such circumstances, the marginal benefit gained by preventing a support person from testifying on recall after the victim has testified is vastly outweighed by the cost of keeping admissible evidence from the jury." (*People* v. *Redondo*, *supra*, 203 Cal.App.3d at p. 654.)

■ Thus, from *Redondo* it is clear that the preferred and normal procedure is that the witness who is also a support person should testify before he or she acts as a support person for the victim-witness, but this rule is not absolute. Defendant here complains that when the court allowed Karen, an important prosecution witness, to act as a support person and then to observe the complaining witness's testimony, his ability to later examine Karen was hindered. Karen testified before assuming her role as support person. Defendant was given an opportunity to examine her before she heard the testimony of the complaining witness. Defendant did not later seek to question her. Thus, he has failed to show any possible hindrance or prejudice. In any event, should it become necessary to recall the prosecution witness/support person, it would be up to the jury to determine the credibility of the witness, knowing that she was present during the complaining witness's testimony. It is a question of the weight to be given the testimony and is not a hindrance to defendant's ability to question a witness.

■ In focusing on whether the court here should have conducted a preliminary inquiry before allowing the presence of support persons, we look to whether the specific circumstances and application of the procedure endangered defendant's right to a fair trial. Because there are no California cases on the subject of influence of support persons upon jurors' view of a witness, we turn to cases from other jurisdictions, which identify pertinent factors for us to consider.

*State* v. *Rulona* (1990) 71 Hawaii 127 [785 P.2d 615] involved an eight-year-old victim testifying while seated on the lap of her sexual abuse counselor. The state statute allowed the support person to sit side-by-side with the victim. Defendant claimed this was error. The appellate court agreed. The court found the procedure was fraught with opportunity to violate the rule that the support person not communicate, verbally or otherwise, with the victim. Assuming a court might have discretion to allow such a procedure, the court found error because there was nothing to show a compelling necessity for such a procedure. The judgment was reversed based on this and other errors. (*Id.*, 785 P.2d at pp. 616-617.)

In *State* v. *Suka* (1989) 70 Hawaii 472 [777 P.2d 240, 82 A.L.R.4th 1029] a representative from the victim-witness program sat next to the testifying victim. In order to further comfort the victim, the support person was allowed to stand behind the victim and place her hands on the victim's shoulder while she testified. Defendant objected. On appeal, he claimed he was denied due process because these actions could have the effect of conveying to the jury that the support person believed the victim was telling the truth. (*Id.*, 777 P.2d at p. 242.) Although the victim was having difficulty testifying, there was not a sufficient showing that it was necessary to have the support person present in order for the victim to testify. The Hawaii Supreme Court reversed, finding defendant was denied his due process right to a fair and impartial trial. (*Id.*, 777 P.2d at p. 243.) The court also noted: "that accompaniment by a *parent* or *other close relative* would be less prejudicial than would accompaniment by a victim/witness counselor as the former is more likely to be seen as family support rather than as vouching for the witness' credibility. On the otherhand [*sic*], the accompaniment of an unrelated victim/witness counselor who is perceived as more neutral is more likely to be seen as vouching for the witness' credibility. Also, the prejudicial impact of accompaniment would generally diminish as the witness' age declines because the jury would be less likely to perceive the accompaniment as vouching for the witness' credibility. Instead the jury would view it as needed assistance to a tender and fragile witness." (*Id.*, 777 P.2d at pp. 242-243, fn. 1.)

The defendant in *Sexton* v. *State* (Ala. Crim. App. 1988) 529 So.2d 1041 argued it was error to allow the assistant district attorney to sit in the witness chair with the five-year-old victim while the victim testified because it bolstered the credibility of the victim. The court agreed that the jurors might view the prosecution's actions as indicating a belief in the victim's credibility. It was improper for the prosecutor to assume the role of a support person. In finding the error did not require reversal, the court noted that the witness

was reluctant to testify and the trial court was in the best position to determine the effect of the procedure. (*Id.* at pp. 1044-1045.)

In *Brooks* v. *State* (1975) 24 Md.App. 334 [330 A.2d 670] a minister sat near the 21-year-old victim of a brutal rape. She had fainted prior to having the minister present. Defendant objected and appealed the issue. (*Id.*, 330 A.2d at p. 674.) The appellate court found that although this was not a recommended procedure, the error, if any, was harmless. The trial court should be allowed to provide some amenities to sustain a victim while she goes through the ordeal of testifying to indignities. Although the presence of a member of the clergy could have elicited sympathy from the jury, the jury was not significantly influenced. In finding the lack of significant influence, the court noted defendant's defense was alibi and not consent. (*Id.*, 330 A.2d at p. 675.)

Finally, in *Stanger* v. *State* (Ind. Ct. App. 1989) 545 N.E.2d 1105, a support person was allowed to sit in a chair two to three feet behind the child victim-witness while the victim testified. The defendant challenged the procedure as a due process violation. The court disagreed.

"We are not convinced that the practice of allowing a parent or relative to sit near a child witness while the child is testifying is so patently unfair to a defendant as to render a jury verdict untrustworthy. Unlike other courtroom practices condemned in the past, such as prison clothing or shackles and gags [citation], there is nothing about a person sitting quietly to the side of a witness which is particularly distracting or likely to arouse intense feeling among jurors for a witness or against a defendant. Indiana decisions attest the presence of a mother in the courtroom during a victim's testimony, is not, of itself, inherently prejudicial. [Citations.]

"[Defendant] has not made an effort to show actual prejudice; accordingly, we find no due process violation." (*Stanger* v. *State, supra,* 545 N.E.2d at p. 1114.)

■ As the above cases illustrate, individualized variables affect whether the presence of a support person violates a defendant's due process rights. One important consideration is the relationship of the support person to the victim-witness. For example, here the victim's sister was a support person. She had already testified in favor of her sister and it was clear from her testimony that she believed Kathy. Her possible influence on the jury by her presence as a support person was minimal since the jury was already well aware of her sympathy for Kathy. It is natural that a close family member will believe and be supportive of another family member while testifying.

The relationship of the other support person to Kathy is not a part of the record.

Another consideration is the location of the support person in relation to the victim-witness. For example, if the support person was sitting unidentified in the public section of the courtroom, the influence would be minimal, if any. In contrast, the closer the support person is located to the victim-witness, the higher the risk the jury might be influenced. When the support person has physical contact with the victim, the risks of improper influence can be higher. These risk factors can be diminished by such factors as the victim's age. The younger the victim the more likely the jury would understand the need for a support person under any circumstances.

Yet another factor is whether the support person does anything that the jury could see that might interject an influence on the victim-witness or the jury such as crying, nodding the head, hand motions, etc. The list of possibilities that might generate an improper influence is limitless.

In determining the degree of possible prejudice, there are various circumstances to consider. For example, the nature of the defense could be an important factor in determining if a support person's influence was important. In this case, defendant's defense was consent. Therefore, the credibility of the victim-witness was important. In other cases involving a defense such as alibi, the defendant might not try to impeach the victim's testimony that the crime had in fact occurred. Also, the defendant may make a tactical decision in some cases that he wants the victim-witness portrayed as an emotionally unstable or weak individual and might want the jury to clearly view the victim's reliance on a support person. The presence of other evidence from which the jury can evaluate the credibility of a witness, such as the victim's demeanor, other witnesses' testimony, pretrial reports, and physical evidence, can lessen the level of possible prejudice to the defendant.

The court's actions also play a part in the questions of influence and prejudice. In those cases where the presence of the support person is clearly known by the jury, the court might admonish the jury to disregard the presence of the support person as a collateral matter unrelated to the process of the determination of guilt. In some cases an admonishment might not be desirable because it would draw undue attention to the presence of an otherwise unobtrusive support person. The court has the duty to use its good judgment to curtail any unnecessary actions by the support person which might sway or influence the victim-witness or jury.

Thus, there are numerous factors which come into play on the questions of whether there has been error or prejudice and whether the error rises to a constitutional level of a due process violation. It is critical that the appellate record reflect as clearly as possible all the factors bearing on the issue. At the least, the record should reflect who the support person is, the precise location of the support person during the witness's testimony, and any activities of the support person during the testimony. ██ In those cases where the procedures employed in the use of the support person might unfairly influence the jury's determination of credibility, the court should explore on the record the necessity of the procedure and explore the viability of other alternatives.[4] Without a record detailing how the procedure was carried out, we can find no particular factors demonstrating that the jury may have been unfairly influenced by the presence of support persons.

In the case here, defendant objected to the presence of the two support persons. The two support persons were identified and included Kathy's sister, Karen. Karen testified before Kathy. When questioned, Kathy said she would appreciate the support of these two persons. Other than the previously quoted comment by defense counsel during closing argument, the record is devoid of any information regarding the utilization of the support persons.

The utilization of support persons is not by itself a practice that presents an unacceptable risk that impermissible factors will come into play which might erode the presumption of innocence. Defendant has not presented any facts here that the particular practice presented an unacceptable risk or that the court should have required a showing of necessity for the procedure. Nor has defendant shown any actual prejudice. Defendant has failed to show a due process violation.

II.-VII.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[4]The prosecution here minimally complied with the statutory requirement that it show Kathy desired and thought it helpful to have Karen, who was herself a prosecution witness, present.

*See footnote, *ante*, page 1718.

## DISPOSITION

The judgment is affirmed.

Best, P. J., and Brown (G. A.), J.,* concurred.

Appellant's petition for review by the Supreme Court was denied January 13, 1993.

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.