Filed 10/9/20  P. v. Burton CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SHANNON LEE BURTON,<br><br>    Defendant and Appellant. | A158557<br><br>(Lake County<br>Super. Ct. No. CR951687) |

Shannon Lee Burton appeals after he was convicted of forcible spousal rape (Pen. Code, § 262, subd. (a)(1); count one)[1] and assault with intent to commit a sex offense (§ 220, subd. (a)(1); count two).  He was sentenced to an aggregate 14-year prison term.  Burton asserts the trial court:  (1) committed instructional error; (2) abused its discretion in excluding certain evidence proffered by the defense; (3) erroneously denied his motion for new trial; (4) violated his constitutional rights by allowing the alleged victim to testify with the assistance of a support person; and (5) committed sentencing error.  We affirm.

---

[1] Undesignated statutory references are to the Penal Code.

1

## BACKGROUND

### A.

Burton and his estranged wife, Katie C., argued at her home. At the time, they were separated, and Katie had obtained a restraining order against Burton because of past physical abuse. Burton repeatedly told Katie that he would not go to sleep until they had sex. Katie repeatedly told him "no" and that she did not want to have sex. After unsuccessfully asking Burton to leave, Katie went to sleep on her couch.

Burton woke Katie up, around 1:00 a.m., saying, "the voices were back and they were back to play." Katie said, "[t]hat's nice" and went back to sleep. Katie was next awakened by Burton ripping her shorts off and putting his hand across her throat and his other hand on her hair. He was on top of her and she was pinned down. She tried scratching him and lifting him off, but she could not move.

Burton spit in his hand, wiped his spit on Katie's genitals, and first attempted, unsuccessfully, to penetrate "[her] butt." Katie testified that she did not know if he was purposefully trying to have anal sex with her and added, "I think it just was a slip." Next, Burton penetrated Katie's vagina and told her, "[she] was going to like it." Katie continued to resist and told Burton that she did not want to have sex. Burton eventually got up and went to bed, telling Katie that she should have apologized.

The next morning, Katie drove Burton to work and then returned home. She did not call the police because she did not know what to do and felt embarrassed, hurt, and scared. When she went to work at the county jail the following day, she was visibly distraught. A coworker

2

asked her what was wrong, and Katie began to cry. Katie said that her husband raped her. After contacting a deputy sheriff, who interviewed her, Katie went to a hospital for a sexual assault exam.

Katie told the nurse who conducted the exam that Burton held her down by her throat and hair, choked her, and penetrated her vagina. She also told the nurse that Burton attempted to anally penetrate her but had been unable to do so because his penis "slipped." Katie complained of pain in her throat, thighs, abdomen, and chest. The nurse determined Katie's lower back and abdomen were tender, but the only visible bruise was on Katie's left breast. The nurse also observed an abrasion to Katie's labia, as well as tenderness inside her vagina. The nurse opined that the abrasion and tenderness indicated "something more [forceful] than just regular sex," and that the physical findings were consistent with Katie's allegation of forcible rape. When asked whether the findings were consistent with consensual sex, the nurse said they were conceivably consistent with "rough" sex. The nurse added, "[i]t's unusual to have [abrasions] and bruising with consensual sex typically."

The defense rested after the prosecution completed its case in chief.

**B.**

The jury convicted Burton on both counts, and the trial court sentenced Burton to state prison for the maximum aggregate term of 14 years. Over Burton's objection, the court imposed the upper term of six years for assault with intent to commit a sex offense and, pursuant to section 667.6, subdivision (c), a full, consecutive upper term of 8 years for forcible spousal rape.

## DISCUSSION

## A.

Burton contends the trial court erred, with respect to the assault with intent to commit a sex offense charge, by failing to instruct sua sponte on the lesser included offense of simple assault (§ 240). After reviewing the instructional question de novo (*People v. Cole* (2004) 33 Cal.4th 1158, 1215), we disagree.

## 1.

A trial court is required to instruct on lesser included offenses, even without a request, if the evidence raises a question as to whether all the elements of the charged offense are present. On the other hand, a court has no duty to instruct on a lesser included offense when there is no substantial evidence to support it. (*People v. Cole, supra,* 33 Cal.4th at p. 1215.)

Assault is a lesser included offense to assault with intent to commit a sex offense. (*People v. Carapeli* (1988) 201 Cal.App.3d 589, 594-595.) "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Assault with intent to commit a sex offense requires an additional element—the assault must be accompanied, at any point, by an intent to commit a specified sex offense. (§ 220, subd. (a)(1); *People v. Dixon* (1999) 75 Cal.App.4th 935, 942; *People v. May* (1989) 213 Cal.App.3d 118, 128.)

## 2.

The record does not contain substantial evidence that Burton committed only a simple assault. The relevant act was Burton's attempt to anally penetrate Katie, which was unsuccessful because his

penis slipped. No evidence suggests that, at that time, Burton acted without intent to commit a sex crime. Burton cites Katie's testimony that she did not know if Burton intended to anally penetrate her, but this is not evidence suggesting Burton committed simple assault. The defense never suggested Burton woke Katie and touched his penis to her anus *without* a sexual purpose. Instead, the defense attacked Katie's credibility, arguing she lied because she was "vindictive," jealous of Burton's attention to other women, and "emotionally unstable." Relying on the fact that Katie weighed at least 50 pounds more than Burton, the defense also argued Katie's testimony was implausible. Under Burton's theory, there was no assault.

Burton's behavior and words evidenced an intent to commit a forcible sex offense against Katie from the beginning. Despite Katie having repeatedly told him no, Burton persisted in telling her that he would not go to sleep until they had sex. While she was asleep, he ripped off her shorts, pinned her down by the throat and the hair, wiped spit on her genitals, took out his penis and attempted to penetrate her anus, and, finally, he successfully raped her. The trial court did not err. (See *People v. Leal* (2009) 180 Cal.App.4th 782, 792 [no error in failing to instruct on simple assault when defendant crept into victim's bedroom in middle of night and digitally penetrated her vagina while she slept].)

**B.**

Burton also fails to persuade us that the trial court abused its discretion by excluding evidence purportedly showing Katie's bias. (See *People v. Wall* (2017) 3 Cal.5th 1048, 1069 ["A trial court's decision to admit or exclude evidence . . . will not be disturbed unless there is a

showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice"].)

## 1.

Burton asked the trial court to admit testimony about Katie's "mean" and "authoritarian" personality, arguing it tended to show her motive to lie. The People raised relevance and Evidence Code section 352 objections. At an Evidence Code section 402 hearing, outside the presence of the jury, Burton's mother and sister testified that Katie frequently dominated Burton, often complained about him, and became upset when he interacted with his family.

The trial court excluded the evidence, concluding it was irrelevant or that any probative value was outweighed by its potential for undue consumption of time and confusion of the issues (Evid. Code, § 352). The court explained, "if there is any probative value, it's incredibly slight and I would exclude it under [Evidence Code section] 352 because then we're just going to have to get into the depth of the relationship and essentially who was the worst person in the relationship. And then the jury, maybe they decide . . . we're going to convict or not convict because we liked one person better than the other person." The court also noted the evidence was cumulative of text messages and Katie's own testimony, which showed the two had a strained relationship.

After the jury reached its verdicts, Burton moved for a new trial on the ground the trial court improperly excluded his proffered bias evidence. The court denied his motion.

**2.**

Even if we assume evidence showing Katie dominated and complained about Burton was relevant because it tended to show her bias (Evid. Code, §§ 210, 780; *People v. Westerfield* (2019) 6 Cal.5th 632, 698), we agree with the trial court that it had negligible probative value and was cumulative and potentially confusing.

Katie testified she and Burton were separated and had a poor relationship. On cross-examination, Katie also admitted she had been upset by Burton touching other women at work. In their closing argument, the People conceded "that they were not getting along very well" and that "the fact that she was unhappy in her marriage . . . [could be] some kind of bias." Burton's additional evidence would not have provided any significant additional insight into Katie's potential reasons to lie. The trial court also reasonably concluded that hearing the evidence from Burton's mother and sister could confuse the jury about the relevant issues and lead to a mini trial on who was to blame for a failed marriage.

The trial court did not abuse its discretion by excluding evidence that had minimal probative value, could confuse the jury, and was cumulative. Nor did the trial court violate Burton's constitutional rights to due process or to present a defense. (See *People v. Blacksher* (2011) 52 Cal.4th 769, 820-821 [defendant's right to put on defense not violated when court admitted other comparable evidence].) We need not separately consider Burton's derivative new trial argument.

**C.**

Burton next contends the trial court erred and deprived him of his due process and confrontation rights by allowing a support person

to accompany Katie to the stand, without admonishment or a finding of necessity. We disagree.

**1.**

Over defense counsel's objection that it would improperly bolster her credibility, Katie testified with a support person (a professional victim advocate) seated next to her. In overruling the objection, the court noted Katie was entitled to the presence of a support person, if requested, under section 868.5, subdivision (a). The court asked defense counsel, "Any reason I should ignore that statute?" Defense counsel responded only, "Constitutional reasons." However, the court agreed to admonish the jury ("Do not consider the support person's presence for any purpose") and did so twice—once before Katie took the stand and again in jury instructions at the close of evidence. Defense counsel did not request any further admonitions.

During a break from Katie's testimony before the jury, defense counsel announced that Burton had noticed an additional support person, seated in the gallery, "coaching and smiling at [Katie]." The support person, who worked for a rape crisis center, stated, "I made no hand gestures in any way. I may have breathed in and breathed out, and that was the only gesture I would have made." The court offered to hold an evidentiary hearing, which defense counsel declined. Thereafter, the court admonished, "I will order that neither of the support persons give a thumbs up or in any way give encouragement, advice, et cetera, to the witness during [her] testimony."

**2.**

The court was not required to make a necessity finding before allowing Katie to testify while accompanied by a support person.

In cases involving certain sex offenses or violent crimes, an adult or child prosecuting witness is entitled to have two supporting persons attend trial, one of whom may accompany the witness to the witness stand. (§ 868.5, subd. (a); *People v. Lord* (1998) 30 Cal.App.4th 1718, 1721.) An additional support person is permitted to remain in the courtroom during the witness's testimony. (§ 868.5, subd. (a).)

Burton's reliance on *People v. Adams* (1993) 19 Cal.App.4th 412 (*Adams*) is misplaced. The *Adams* court rejected a constitutional challenge to section 868.5, but relied on cases involving denial of face-to-face confrontation (*Coy v. Iowa* (1988) 487 U.S. 1012 [screen between witness and defendant]; *Maryland v. Craig* (1990) 497 U.S. 836 [testimony by closed circuit tv]) and its conclusion that a support person may affect witness demeanor, to infer a legislative intent to require a case-specific necessity finding before a witness could also serve as the prosecuting witness's support person. (*Adams, supra,* 19 Cal. App.4th at pp. 441-444.)

*Adams* is factually distinguishable. The support person involved (the prosecuting witness's father) was himself a testifying witness; additionally, there were allegations that he abused her, thus presenting a risk his presence would influence the victim's testimony. (*Adams, supra*, 19 Cal.App.4th at pp. 434-435; *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1298.) Accordingly, subdivision (b) of section 868.5 provides some support for the *Adams* court's conclusion. (See § 868.5, subd. (b) [requiring support person who is also a witness to be "both

9

desired by the prosecuting witness for support and . . . helpful to the prosecuting witness"].)[2]

If, as is true here, the support person does not testify, several courts have held—and we agree—there is no universal requirement to demonstrate necessity. (§ 868.5, subds. (a)-(b); *People v. Spence* (2012) 212 Cal.App.4th 478, 514-517; *People v. Johns* (1997) 56 Cal.App.4th 550, 554-555 (*Johns*); *People v. Patten* (1992) 9 Cal.App.4th 1718, 1725-1727 [support person only present in audience]; cf. *People v. Lord, supra*, 30 Cal.App.4th at pp. 1721-1722 [different panel of this division questioning the *Adams* court's conclusion and stating, in dicta, that the "required showing is that set forth in [section 868.5, subdivision (b)]: the support person's attendance 'is both desired by the prosecuting witness for support and will be helpful to the prosecuting witness' "].)

---

[2] Section 868.5, subdivision (b), provides: "*If the person or persons so chosen are also witnesses*, the prosecution shall present evidence that the person's attendance is both desired by the prosecuting witness for support and will be helpful to the prosecuting witness. Upon that showing, the court shall grant the request unless information presented by the defendant or noticed by the court establishes that the support person's attendance during the testimony of the prosecuting witness would pose a substantial risk of influencing or affecting the content of that testimony. In the case of a juvenile court proceeding, the judge shall inform the support person or persons that juvenile court proceedings are confidential and may not be discussed with anyone not in attendance at the proceedings. *In all cases, the judge shall admonish* the support person or persons to not prompt, sway, or influence the witness in any way. Nothing in this section shall preclude a court from exercising its discretion to remove a person from the courtroom whom it believes is prompting, swaying, or influencing the witness." (Italics added.)

10

Burton has not shown that his statutory or constitutional rights were infringed by the presence of either support person without a necessity finding.

**3.**

Similarly, the court was not required to admonish Katie's support persons before she testified.

First, by failing to press the point until she was midway through her testimony, Burton forfeited his argument. (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1167-1168, superseded by statute on other grounds as stated in *People v. Brooks* (2018) 23 Cal.App.5th 932, 945 fn.17.)

Second, in any event, we agree with the *Valenti* court that section 868.5 does not require courts to admonish support persons who are not also witnesses. (*People v. Valenti, supra,* 243 Cal.App.4th at pp. 1169-1172; but see *People v. Spence, supra,* 212 Cal.App.4th at pp. 513-514 [assuming without analysis that admonishment requirement applies "whether or not the support person also serves as a prosecuting witness"].) "Had the Legislature wanted the court to admonish all support people, witness and non-witness alike, it would have made little sense, logically or grammatically, to include that requirement amidst the witness-specific provisions in subdivisions (b) and (c), rather than with the general requirements in subdivision (a)." (*People v. Valenti, supra*, 243 Cal.App.4th at p. 1171, italics omitted.)

Here, because neither of the support persons was also a witness, the trial court did not err by failing to admonish them before Katie began her testimony.

11

**4.**

Nor has Burton demonstrated that any assumed error was prejudicial or that Katie's use of support persons violated his constitutional rights. (*People v. Myles* (2012) 53 Cal.4th 1181, 1214 ["[a]bsent improper interference by the support person, . . . no decision supports the proposition that . . . the support person's mere presence infringes his due process and confrontation clause rights"].)

Burton does not argue the support person who accompanied Katie to the stand did anything improper. There is only a conflict in the record as to whether Katie's additional support person, who was seated in the public section of the courtroom and not pointed out to the jury, engaged in any improper interference. By declining the trial court's offer to conduct an evidentiary hearing to resolve that conflict, Burton failed to make an adequate record to support his claim. (See *People v. Lord, supra,* 30 Cal.App.4th at p. 1722 [objection forfeited where its absence deprived trial court of opportunity to correct any procedural error and make evidence-based finding that support person necessary]; *People v. Patten, supra*, 9 Cal.App.4th at p. 1733.)

And even if we analyze the behavior admitted by the spectator support person (who said, at most, she may have breathed in and out), no improper interference is evident. "A spectator's conduct is grounds for reversal if it is 'of such a character as to prejudice the defendant or influence the verdict.'" (*People v. Myles, supra,* 53 Cal.4th at p. 1215.) Burton does not persuasively explain how breathing by an unidentified support person in the public section of the courtroom could have "suggest[ed] to the jury that she believed [Katie's] account of the incident." (*Id.* at pp. 1214-1215.) In the unlikely event her breathing

12

was noticed by the jury, we presume the jury followed the court's instruction that it must base its verdict solely on the evidence, without considering the presence of the support person or being swayed by sympathy or prejudice.

## D.

Finally, Burton contends the trial court was equitably estopped from sentencing him to full, consecutive terms, pursuant to the alternative sentencing scheme provided by section 667.6, subdivision (c). He is wrong.

### 1.

A subordinate consecutive term is normally imposed at one-third the middle term. (§ 1170.1, subd. (a).) Under the alternative sentencing scheme established by section 667.6, subdivision (c) (*People v. Hicks* (1993) 6 Cal.4th 784, 789), a court may impose "a full, separate, and consecutive term . . . for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion." (§ 667.6, subd. (c).) Burton's offenses are among those specified in section 667.6, subdivision (e). (§ 667.6, subd. (e)(2), (9).) Having been charged with such offenses, sentencing under the alternative sentencing scheme provided by section 667.6, subdivision (c), did not require separate pleading or proof. (*People v. Reynolds* (1984) 154 Cal.App.3d 796, 810-811; *People v. Price* (1984) 151 Cal.App.3d 803, 820-821.)

### 2.

Relying on Burton's prior convictions for several sex offenses (detailed in the presentence report) and Katie's particular vulnerability among other factors, the probation department recommended

sentencing Burton to the maximum aggregate term of 14 years, pursuant to section 667.6, subdivision (c).

At the beginning of the sentencing hearing, the court indicated it was inclined to follow that recommendation. Both the prosecutor and defense counsel asserted application of the alternative sentencing scheme would be in error because it had not been pled and proved. Relying on authority to the contrary (*People v. Reynolds, supra,* 154 Cal.App.3d at pp. 810-811; *People v. Price, supra,* 151 Cal.App.3d at pp. 820-821), the trial court elected to impose a full-term, consecutive sentence on the subordinate count, pursuant to section 667.6, subdivision (c).

**3.**

Burton contends *the trial court* was equitably estopped to elect the alternative sentencing scheme because Burton rejected a pretrial plea offer without having an informed understanding of his maximum exposure after *the prosecutor* mistakenly informed him section 667.6 could not apply. The factual premise of his argument is unsupported.

Burton relies on his rejection of a plea offer, under which he would have served the midterm of four years for assault with intent to commit a sex offense (§ 220, subd. (a)(1)). In arguing against imposition of a full-term consecutive sentence on the subordinate count, defense counsel raised an estoppel argument—suggesting the trial court was estopped from applying the alternative sentencing scheme because the prosecutor mistakenly told Burton, before the offer was rejected, the alternative sentencing scheme did not apply. Importantly, however, defense counsel conceded, "I did tell my client it was a remote possibility that he could be facing 14 years[.]" Thus, Burton knew his

14

exposure.  Burton also cites no authority supporting his theory of equitable estoppel.

Nor does *People v. Goodwillie* (2007) 147 Cal.App.4th 695 (*Goodwillie*), establish that a due process violation occurred here. *Goodwillie* found a due process violation when a self-represented defendant expressed, on the record, his willingness to plead guilty if he would receive full credit for good behavior.  The defendant rejected the prosecution's plea offer because *both* the trial court and the prosecutor misinformed him that he would be ineligible for full credit.  (*Goodwillie, supra*, 147 Cal.App.4th at pp. 731–732, 736.)  After the defendant was convicted by a jury, the trial court realized the defendant was in fact eligible for full credit.  (*Id.* at p. 732.)

There are several obvious distinctions between what happened in *Goodwillie* and the circumstances presented here.  Most importantly, Burton was represented by counsel, who correctly advised him that his maximum exposure was 14 years.  Furthermore, there is nothing in the record before us that suggests Burton would have accepted the plea offer if the prosecutor had correctly informed him of the potential maximum sentence.  To the contrary, defense counsel stated on the record that Burton *was* so advised by his own counsel and that Burton rejected the plea offer because he maintained his innocence.  Unlike the defendant in *Goodwillie*, Burton knew his exposure and made an informed decision to reject the plea offer.  He has not shown the trial court abused its discretion or violated his due process rights.

**DISPOSITION**

The judgment is affirmed.

_____
BURNS, J.


We concur:


_____
SIMONS, ACTING P.J.


_____
REARDON, J.*


A158557

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.