Filed 11/22/24  P. v. Whyte CA1/5
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>LARRY WHYTE,<br><br>        Defendant and Appellant. | A160769<br><br>(Sonoma County<br>Super. Ct. No. SCR7243081) |

Defendant and appellant Larry Whyte (Appellant) appeals from the trial court's judgment following his conviction of various sexual abuse offenses.  We reject his claims, except we remand for resentencing consistent with the current version of Penal Code section 1170, subdivision (b),[1] as amended by Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567), effective January 1, 2022.

PROCEDURAL BACKGROUND

In September 2019, the District Attorney of Sonoma County filed an information charging Appellant with six counts of committing a lewd act upon a child under the age of 14, Jane Doe, between August 2008 and August 2011 (count one), and between August 2010 and August 2012 (counts four,

---

[1] All undesignated statutory references are to the Penal Code.

1

five, seven, eight, and nine) (§ 288, subd. (a)); causing a minor, Jane Doe, to engage in sexual conduct for the purpose of making a photograph between August 2009 and August 2011 (count two; § 311.4, subd. (c)); possession of child pornography on February 1, 2019 (count three; § 311.11, subd. (a)); sexual penetration with a child 10 years old or younger, Jane Doe, between August 2010 and August 2012 (count six; § 288.7, subd. (b)); and oral copulation of a person under 16 years old, Jane Doe, between August 2015 and December 2015 (count ten; former § 288a, subd. (b)(2)).

In January 2020, a jury found Appellant guilty on all counts. In August, the trial court sentenced Appellant to prison for a determinate term of 17 years and 4 months, plus an indeterminate term of 15 years to life.

The present appeal followed.[2]

## FACTUAL BACKGROUND

<u>Testimony of Jane Doe</u>

Jane Doe, the alleged victim, was 18 at the time of her testimony in January 2020. Appellant was Jane Doe's godfather. She met him when she was around six years old. She would visit Appellant in his recreational vehicle (RV) when he was in town, and he would buy her things and take her to fun places. During the visits to the RV, Appellant encouraged Jane Doe to be naked. He told her it was "normal" and "natural," and he showed her "pictures on his computer of friends of his that were nude and at beaches

---

[2] On October 18, 2022, this court filed a decision rejecting all of Appellant's claims on appeal. The California Supreme Court granted review, and, on October 16, 2024, it transferred the case back to this court with directions to vacate our decision and reconsider the cause in light of the decision in *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*). Thereafter, this court received supplemental briefing from the parties pursuant to rule 8.200(b)(2) of the California Rules of Court.

with a bunch of other nude people." He also showed her pornographic movies.

Appellant encouraged Jane Doe to play a version of hide-and-seek in which she was naked; sometimes he was naked too. On multiple occasions when Jane Doe was seven to 10 years old, while playing hide-and-seek with the lights on, Appellant touched her on the chest and vagina, including inside her vagina. During these games, Jane Doe was alone with Appellant.

On multiple occasions when Jane Doe was between eight and 10 years old, Appellant used paint and markers to draw on her naked body. He also photographed her naked painted body, and she painted his naked body.

Jane Doe also recalled an occasion when Appellant put her hand on his penis; he said it was something his granddaughter (Jane Doe 2) had done. She "vaguely remember[ed]" it happening more than once.

Multiple times, starting when Jane Doe was around the age of nine, Appellant held a vibrating electric toothbrush and sometimes an electric massager against her clitoris. Appellant told Jane Doe that his granddaughter and two of her friends were able to withstand the "tickl[ing]" for certain amounts of time, which made Jane Doe feel she should try to last longer.

When Jane Doe was around 11 years old, a friend (later identified as Katrina P.) began accompanying Jane Doe to Appellant's RV. Katrina P. was present for games of hide-and-seek, during which the lights in the RV were off and Appellant "would try to identify who was who by touching" their "body parts."

On one occasion before Jane Doe's 14th birthday, Appellant put his mouth on her vagina. Katrina P. was not present. Sometime after then, Jane Doe stopped seeing Appellant because she "realized what he was doing

3

was wrong." When Jane Doe was 14 years old, she told her mother about the sexual abuse, but she did not tell law enforcement at that time.

On cross-examination, defense counsel confronted Jane Doe with inconsistencies between her testimony and prior accounts of the abuse. When asked about the delay in reporting the abuse to law enforcement, she said she "was not strong enough to go forward" earlier.

Testimony of Jane Doe 3

Jane Doe 3, who was 16 years old at the time of her testimony, was a friend of Appellant's granddaughter (Jane Doe 2). Jane Doe 3 testified that she and Jane Doe 2 would visit Appellant in his RV when he traveled to Oregon when she and Jane Doe 2 were around six to eight years old. During that time, Appellant introduced them to a game that involved hiding each other's pants and underwear; they were commonly naked from the waist down in the RV. During that same time period, Appellant also frequently had the girls touch his penis. Finally, Jane Doe 3 remembered Appellant holding a vibrating electric toothbrush against her vagina a couple of times; the object of the "game" was to see how long she could stand the "tickling."

Physical Evidence Recovered from Appellant's RV

In August 2017, Jane Doe gave a statement to the police regarding the sexual abuse. In early 2019, Appellant was arrested in the City of Petaluma and his RV was searched. An electric toothbrush and an electric massager were found in the RV; at trial, Jane Doe identified them as the ones Appellant held to her vagina. Also, a picture frame with a digital storage card was found in the RV. The police were able to recover 34 deleted photos from the storage card. Thirteen of them were photographs of a girl's prepubescent naked body, sometimes with body paint. A number of the photographs were centered on the girl's genital area. When a deputy showed

4

cropped versions of two of the photographs to Jane Doe, she identified the girl as herself.

Katrina P.'s Testimony for the Defense

Katrina P. testified she met Jane Doe when she was around seven years old; Jane Doe was eight years old. Katrina P. was about 10 years old when she met Appellant. She and Jane Doe always visited Appellant together when he was in town. Katrina P. had never seen Appellant do anything inappropriate and she opined the allegations against Appellant were not consistent with his character. She never saw Appellant walk around naked and he never showed her photographs or videos of naked people. Appellant never touched her vagina with an electric toothbrush or massager, and she never saw Appellant do that to Jane Doe. Sometimes Jane Doe took off her clothes, and Appellant encouraged her to put them back on. They did play hide-and-seek in the dark in Appellant's RV, but Appellant did not grope her during the game. Katrina P. recalled that Jane Doe would sometimes get naked during the game and Appellant had to get her to put her clothes back on. Katrina P. and Jane Doe stopped being friends at the age of 13. Katrina P. believes Jane Doe is not an honest person.

On cross-examination, Katrina P. acknowledged Appellant is the only father figure in her life. She also admitted that Jane Doe was the girl in one of the sexually explicit photos recovered from Appellant's RV.

## DISCUSSION

I. *There Was No Ineffective Assistance of Counsel With Respect to a Statement Made by Jane Doe's Support Person*

After the prosecution called Jane Doe to the stand, but before the start of her substantive testimony, the trial court commented, "I see that you have someone with you. This is an emotional support person. Are you from the

District Attorney's Office?" The support person responded that she was from "Verity." The court then asked Jane Doe if she "wish[ed] to have [the support person] with [her] while [she] testif[ied]." After Jane Doe answered in the affirmative, the court asked the support person to "explain what Verity is." The support person responded, "We are the sexual assault rape crisis centers. We support people who have been sexually assaulted or trafficked." Defense counsel did not object.

Under section 868.5, subdivision (a), in a case involving charges of sexual abuse such as those in the present case, a "prosecuting witness . . . shall be entitled, for support, to the attendance of up to two persons of [his or her] own choosing, one of whom may be a witness, at the preliminary hearing and at the trial, or at a juvenile court proceeding, during the testimony of the prosecuting witness." It is well established that "[t]he utilization of support persons is not by itself a practice that presents an unacceptable risk that impermissible factors will come into play which might erode the presumption of innocence." (*People v. Patten* (1992) 9 Cal.App.4th 1718, 1732–1733.)

On appeal, Appellant concedes that, normally, a support person's presence is "statutorily and constitutionally permissible." But he argues his due process rights were violated in the present case because, during the challenged exchange, the trial court improperly elicited a statement that the support person "believed that Jane Doe was in fact a victim of sexual assault or trafficking." Appellant characterizes the claim as both an "inadvertent act of judicial misconduct" and "an act akin to spectator misconduct." He also argues the issue should be analyzed under "individualized variables that affect whether the presence of a support person violates a defendant's due process rights," citing *People v. Patten*, *supra*, 9 Cal.App.4th 1718 and section 868.5. We conclude that, however the claim is characterized, any claim based

6

on the challenged comment by the support person was forfeited, and defense counsel's forfeiture of that claim was not ineffective assistance of counsel (IAC).

At the outset, we conclude Appellant's claim was forfeited due to his counsel's failure to object. (*People v. Stevens* (2009) 47 Cal.4th 625, 641.) Appellant argues an objection "would have been futile as it was the court [that] inadvertently elicited this information for the jury." But Appellant points to nothing in the record suggesting the trial court would have been unwilling to admonish the jury. (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1320 ["the circumstances in no way suggest an objection and a request to have the jury admonished would have found an unsympathetic jurist"].) For example, the court could have admonished the jury pursuant to CALCRIM No. 377, which provides in part, "Do not consider the presence of the [support person] who [is] with the witness for any purpose or allow it to distract you." Or the court could have specifically admonished the jury to disregard the support person's description of Verity. Appellant asserts that such an admonishment would have been ineffective, but he provides no persuasive reasoning why and cites no authority to that effect. "We presume that a jury follows the court's admonishments." (*People v. Schultz* (2020) 10 Cal.5th 623, 673.) Accordingly, any claim based on the challenged comment by the support person has been forfeited.

Appellant also contends that if his claim was forfeited, then he received IAC.[3] " ' "In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of

_____

[3] Our analysis as to IAC is the same whether the claim is characterized as judicial misconduct, spectator misconduct, or a challenge to the presence of the support person.

7

reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. [Citations.] . . . Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel." ' " (*People v. Brown* (2014) 59 Cal.4th 86, 109 (*Brown*).) "If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of [IAC] must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 746.)

We reject Appellant's IAC claim. Defense counsel reasonably could have concluded an admonishment regarding the support person's comment was unnecessary in light of the introductory admonishments the trial court gave to the jury earlier in the day, including, "You must decide what the facts are in this case. You must use only the evidence that is presented in the courtroom. Evidence is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I tell you to consider as evidence." The court had also admonished the jurors, "You alone must judge the credibility or believability of the witnesses." "Defense counsel cannot be faulted for not requesting an instruction that would duplicate the one given by the court." (*People v. Lucero* (2000) 23 Cal.4th 692, 730.)

Furthermore, defense counsel reasonably could have chosen not to object or request a special admonishment to avoid drawing attention to the support person's comment or to avoid suggesting to the jury that the comment had significance. As respondent argues on appeal, "defense counsel could have reasonably assumed the jury would interpret the remark as a general statement about the organization's mission." Given the likelihood

8

that jurors would put no weight on the support person's brief general description of her employer, defense counsel could have reasoned that an objection and request for an admonishment would have been counter-productive. (*People v. Harris* (2008) 43 Cal.4th 1269, 1290 ["while requesting an admonition was one tactical option, counsel could also have decided that objecting would focus the jury's attention on the [challenged statement] in ways that would not be helpful to the defense"]; *People v. Carter* (2003) 30 Cal.4th 1166, 1223 ["the record does not reveal whether counsel had a plausible tactical reason for not requesting" that the jury be instructed to view extrajudicial statements with caution, "such as to avoid unduly focusing the jury's attention on those statements"].)[4]

In conclusion, Appellant's claims based on the challenged statement by the support person have been forfeited and Appellant has not shown defense counsel's failure to object could not have been a reasonable tactical decision, as required for an IAC claim on direct appeal.

II.     *The Trial Court Did Not Err in Admitting Expert Testimony*

---

[4] We also reject any IAC claim on the theory that the support person's statement, when viewed in the totality of the circumstances, made the support person's *presence* a due process violation. Defense counsel could reasonably have concluded that objecting to the presence of the support person after she made the challenged statement would have engendered great sympathy in favor of Jane Doe, and that the single passing statement did not render the support person's presence prejudicial in light of the trial court's instructions.

Appellant contends the trial court erred in allowing the prosecution to introduce expert testimony regarding Child Sexual Accommodation Abuse Syndrome (CSAAS). Appellant has not shown error.[5]

A.    *Background*

Before trial, Appellant moved to exclude expert testimony regarding CSAAS. Appellant argued the evidence in the case did "not warrant" such testimony because "[t]here is no evidence tending to show that Jane Doe manifested any symptoms as characterized in the syndrome." At the hearing on the motion, defense counsel also argued the CSAAS expert testimony should be excluded because the risk of prejudice far outweighed the probative value, especially because Jane Doe was an adult who could explain her own behavior to the jury. The trial court denied the motion.

At trial, Dr. Blake Carmichael testified he is a clinical psychologist working primarily with children who have suffered some form of "maltreatment." After explaining his background and experience, he was deemed an expert regarding CSAAS. Dr. Carmichael testified he had no knowledge about the facts of the case before the jury. He opined the CSAAS model can be "very helpful to educate people" about the "counterintuitive" behavior of victims of childhood sexual abuse. Among other things, he testified that people should not have expectations regarding the outward emotional responses of children to abuse; that abused children may repeatedly return to an abuser; how abusers may "groom" children for abuse; why children may delay in reporting abuse; and why abused children may have faulty memories.

---

[5] Because Appellant has shown no error in admission of the expert testimony, he necessarily has failed to show IAC due to his counsel's failure to present certain objections to the testimony.

After the close of evidence, the trial court instructed the jury regarding expert testimony in general using CALCRIM No. 332. The court also instructed the jury regarding CSAAS testimony specifically using CALCRIM No. 1193. The court explained, "You have heard testimony from Dr. Carmichael regarding [CSAAS]. [¶] Dr. Carmichael's testimony about [CSAAS] is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not Jane Doe's conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

B. *Legal Background*

We review the trial court's decision whether to admit expert testimony for an abuse of discretion. (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 170 (*Lapenias*).) "An appellate court cannot reverse a judgment based on the erroneous admission of evidence unless the admitted evidence 'resulted in a miscarriage of justice.' (Evid. Code, § 353, subd. (b).) In a criminal case, a miscarriage of justice can only be found when the reviewing court determines it is reasonably probable that a result more favorable to the defendant would have been reached had the trial court excluded the erroneously admitted evidence." (*Lapenias*, at p. 170, fn. omitted.)

"Expert testimony on 'the common reactions of child molestation victims,' known as CSAAS theory evidence, 'is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident – e.g., a delay in reporting – is inconsistent with his or her testimony claiming molestation.' [Citation.] ' "Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's

11

seemingly self-impeaching behavior." ' [Citation.] [¶] But such evidence 'is not admissible to prove that the complaining witness has in fact been sexually abused.' [Citation.] 'The expert is not allowed to give an opinion on whether a witness is telling the truth . . . .' " (*People v. Julian* (2019) 34 Cal.App.5th 878, 885; see also *Lapenias, supra*, 67 Cal.App.5th at p. 170.)

C.     *Analysis*

At the outset, Appellant argues the CSAAS evidence was "irrelevant and inadmissible because there are no longer misconceptions to correct and there is no evidence that any juror in this case held misconceptions related to how abuse victims should act . . . ." That argument appears to have been forfeited because Appellant cites nowhere in the record where he made it below. In any event, the same argument was rejected in *Lapenias, supra*, 67 Cal.App.5th at pages 172–173, which involved another case in which Dr. Carmichael testified. The Court of Appeal reasoned that the "argument rests on a factual assertion (misconceptions about child sexual abuse are no longer present) that was not established prior to the trial court's evidentiary ruling." (*Id.* at p. 172.) Moreover, "while some prospective jurors in this case may have been aware of some aspects of CSAAS, it is not clear from the record that all the empaneled jurors were aware of the entire spectrum of CSAAS evidence (secrecy, helplessness, entrapment, accommodation, and recantation). Moreover, even if we were to assume that all the empaneled jurors were fully aware . . . , we would then find Dr. Carmichael's testimony to be merely cumulative and therefore not prejudicial." (*Id.* at pp. 172–173.) We agree with that analysis.

Appellant next argues there was no need for expert testimony regarding CSAAS because Jane Doe was an adult at the time she testified. He reasons, "She could most certainly have explained for herself the reasons

why she behaved in the manner she did. If it is true she delayed in reporting, she could have explained to the jury why this was so. She could have explained for herself if she had a faulty recollection of events [that] occurred so many years in the past." In support of his position, he cites only a 1989 Ohio Court of Appeals decision concluding that a 14 year old was "perfectly capable of communicating a case of alleged sexual abuse" and the expert testimony would be "the equivalent of allowing an expert to testify as to credibility." (*State v. Davis* (1989) 64 Ohio App.3d 334, 346–347.) We reject that reasoning. In California, expert testimony regarding CSAAS is relevant to assist the jury in determining whether the alleged victim's "conduct was not inconsistent with the conduct of someone who has been molested." (CALCRIM No. 1193; see also, e.g., *People v. Munch* (2020) 52 Cal.App.5th 464, 475 ["The CSAAS evidence was relevant to advise jurors that such normally self-impeaching behavior is not unusual for sexually abused children"].) Expert testimony "disabus[ing] jurors" of "commonly held 'myths' or misconceptions about child sexual abuse" (*Lapenias*, *supra*, 67 Cal.App.5th at p. 171) is relevant regardless of whether the witness can also explain their conduct. Indeed, the witness can only explain their own behavior, not the "typical reactions among children who have been sexually abused." (*Id.* at p. 172.) Furthermore, even if we were to conclude that Jane Doe's testimony was an adequate substitute for testimony about CSAAS, we would then find Dr. Carmichael's testimony to be merely cumulative and therefore not prejudicial. (See *id.* at pp. 172–173.) Appellant's argument fails.

Appellant also argues expert CSAAS testimony is inadmissible because it is unreliable under the *Kelly* rule,[6] which "concerns the admissibility of evidence based on a new scientific method, which requires a showing the

---

[6] *People v. Kelly* (1976) 17 Cal.3d 24.

13

method is generally accepted in the relevant scientific community." (*Lapenias*, *supra*, 67 Cal.App.5th at p. 173.) That argument appears to have been forfeited because Appellant cites nowhere in the record where he made it below. In any event, the argument was rejected in the *Lapenias* decision, which reasoned, "Here, the theory of CSAAS is not new. [Citation.] Further, CSAAS testimony does not purport to provide a definitive truth; rather, the expert testimony attempts to disabuse jurors of misconceptions they might hold about the conduct of children who have been sexually abused. In short, expert CSAAS testimony is not ' " 'scientific' " evidence' subject to the *Kelly* rule." (*Lapenias*, at p. 173.) Again, we agree with the analysis of the *Lapenias* court. (See also *Munch, supra,* 52 Cal.App.5th at pp. 472–473 [also rejecting challenge to CSAAS evidence under the *Kelly* rule].)

Appellant argues the CSAAS evidence should have been excluded under Evidence Code section 352 because the probative value was substantially outweighed by the probability of undue prejudice. The argument rests on his previous arguments that the CSAAS evidence is not probative because there are no longer generally held misconceptions and because the CSAAS theory lacks scientific validity. We have rejected those arguments and have concluded that Dr. Carmichael's testimony was relevant to help the jury to assess Jane Doe's credibility.[7]

Neither did Appellant demonstrate a risk of undue prejudice that substantially outweighed the probative value of the expert testimony. "Here, the prosecution charged [Appellant] with committing multiple sex crimes against his [goddaughter] when she was under 14 years old. From our

---

[7] The decision in *People v. Clotfelter* (2021) 65 Cal.App.5th 30 is distinguishable. In that case, it was "not at all apparent that the CSAAS testimony was relevant" because the alleged victims "denied they had been touched inappropriately." (*Id.* at p. 64.)

perspective, the prejudicial impact of the relatively benign CSAAS testimony was likely to have paled in comparison to the charged conduct." (*Lapenias*, *supra*, 67 Cal.App.5th at p. 174; see also *Munch, supra*, 52 Cal.App.5th at p. 475 [the expert's "testimony was relatively short and benign as compared to the highly relevant explicit details of the sexual offenses Jane Doe testified about" and "[t]he potential prejudicial impact of [the expert's] testimony was also reduced because [the expert] testified that he knew no facts about this case"].) Contrary to Appellant's argument, Dr. Carmichael was very clear he was not opining on whether Jane Doe had been abused, and the trial court's instructions clearly prohibited the jury from treating the expert's testimony as "evidence that the defendant committed any of the crimes charged against him." The trial court did not abuse its discretion in declining to exclude the CSAAS evidence under Evidence Code section 352. (*Lapenias*, at p. 174; *Munch*, at p. 475.)[8]

Finally, Appellant argues admission of the expert testimony about CSAAS violated his rights to due process and a fair trial under the federal

---

[8] Appellant argues for the first time in his reply brief that Dr. Carmichael's testimony was improper because he "answer[ed] questions that improperly mirrored various facts in the case" and because the expert did not expressly testify to the "five components of the CSAAS theory." (*Lapenias*, *supra*, 67 Cal.App.5th at p. 169.) Arguments asserted for the first time in a reply brief are forfeited. (*Proctor v. Vishay Intertechnology, Inc.* (2013) 213 Cal.App.4th 1258, 1273–1274.) In any event, the arguments are meritless. Appellant cites no authority the CSAAS theory must be presented in any particular manner, as long as the testimony explains misconceptions about the behavior of child sexual abuse victims and it is not presented to prove the alleged sexual abuse occurred. (*Lapenias,* at p. 170.) And questioning whether particular behaviors are inconsistent with being a victim of sexual abuse, including behaviors manifested by the alleged victim in the case, is in accordance with the purposes for which the CSAAS evidence is admitted.

15

Constitution. The argument is premised on Appellant's preceding contentions that the testimony was irrelevant. Because we have rejected those arguments, we also reject his contention that admission of the evidence was unconstitutional.

III.    *Appellant Has Not Shown Prejudicial Prosecutorial Misconduct*

Appellant contends the prosecutor committed misconduct in eliciting improper CSAAS testimony and in misusing that testimony during closing argument, in violation of the trial court's order restricting the admissibility and use of CSAAS evidence. The claim fails.

At the outset, we observe the claim is forfeited because Appellant cites no portion of the record where he objected below to the portions of testimony and argument challenged on appeal. (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1164 (*Johnsen*).) Appellant argues the failure to object was IAC.[9] That claim fails because counsel may have had a tactical reason not to object (*id.* at p. 1165), and, as explained below, any objection would have been without merit and the alleged misconduct was not prejudicial. (See *People v. Anderson* (2001) 25 Cal.4th 543, 587 ["Counsel is not required to proffer futile objections"]; *Brown, supra*, 59 Cal.4th at p. 109 [an IAC claim requires a showing of a " ' "a reasonable probability" ' " the defendant suffered prejudice].)

As noted above, the claim fails on the merits. The trial court prohibited the prosecution's expert from giving "any opinions or conclusions on whether or not abuse occurred in this case, but rather just on the accommodation syndrome itself so that the jury can fully understand that issue." Appellant

---

[9] We reject Appellant's contentions that his pretrial objection to CSAAS evidence preserved his claims regarding the alleged misconduct and that any objections would have been futile.

argues that, "[i]n violation of that court order, the prosecution elicited testimony from its expert witness that was tailored to fit Jane Doe's testimony, which created a predictive profile of a child abuse victim to show that Jane Doe was telling the truth about being sexually abused."

We disagree. As noted in footnote 8, *ante*, it does not violate the purposes for which CSAAS evidence is admitted to ask an expert whether particular behaviors are inconsistent with being a victim of sexual abuse, including behaviors manifested by the alleged victim in the case. Accordingly, the prosecutor in the present case did not violate the trial court's order or the established limits on CSAAS testimony by asking Dr. Carmichael whether the jury should "have any expectations" about a child's "outward emotional responses" to abuse; whether an abused child should be expected to remember every detail of the abuse; whether it would be inconsistent with abuse for a victim to recall additional details over time; whether it would be inconsistent with abuse for a child to return to the abuser; and whether the likelihood of disclosure of abuse could be affected by "groom[ing]," a victim's feeling of personal strength, or the child's "special relationship" with their abuser.

Although those were behaviors Jane Doe manifested, Appellant points to nowhere in the expert's testimony where the expert suggested that if a child showed such behaviors it meant they *had been abused*. Instead, the expert clearly testified that the purpose of educating the jurors about CSAAS was to disabuse them of misconceptions they may have regarding how abused children behave. The expert said, "It is important to educate people about this population of kids that most people don't know about, don't study, don't come into contact with. And understanding there's a variety of ways how kids can and do react after they have been abused, some of which are kind of

17

counterintuitive." The expert emphasized, "There is no set of behaviors or things that you can point to to say that kid was abused because they did this or they did not do that." On cross-examination, he confirmed he had "no personal opinion as to the credibility of anyone who has been testifying during the course of [the] trial," emphasizing, "I don't know any of that information, and that is the purview of the jury and the legal process." Appellant has not shown the CSAAS testimony exceeded the scope of the trial court's order or the established legal limits.

Appellant also argues the prosecutor committed misconduct in his closing argument. Primarily, Appellant argues the prosecutor "invited jurors to misuse the CSAAS evidence as proof that Jane [Doe] had in fact been abused." We disagree. Appellant points to several brief ambiguous comments. To wit, the prosecutor argued: "Dr. Carmichael taught us that childhood sexual abuse occurs in the context of a relationship"; "look at the nature of the relationship, it provides you with a bit of guidance on how to understand how things happened the way they did"; and "[w]hen we hear from Jane Doe about how this happened, we hear from Dr. Carmichael about how this happened. It is hard, but it makes sense."

Although one interpretation of those statements is that Jane Doe was abused because the circumstances she described mirrored those described by Dr. Carmichael, that interpretation was belied by the prosecutor's other, more substantial arguments, in which he properly and repeatedly used the CSAAS evidence to emphasize that the jury should "have no expectations" regarding how Jane Doe should have responded if she was abused. And, as noted previously, Dr. Carmichael was clear that he was *not* testifying Jane Doe was abused if she manifested the behaviors he described, and the trial court's instructions clearly prohibited the jury from treating the expert's

18

testimony as "evidence that the defendant committed any of the crimes charged against him."[10]

On appeal, Appellant is required to "show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667.) " 'In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." ' " (*Ibid.*) In the present case, there is no reasonable likelihood the jury understood the challenged brief and ambiguous arguments to mean that it could use the CSAAS testimony as evidence Jane Doe was abused, contrary to the trial court's instructions. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852 ["Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions"].)[11]

---

[10] Defense counsel's closing reflected a consistent interpretation of Dr. Carmichael's testimony. He argued the expert's testimony was not "very helpful . . . because his testimony is essentially there is no fixed pattern by which victims of abuse react to abuse. So it could be consistent that, you know, they delay in their reporting. They might report right away. Sometimes they provide inconsistent testimony. Sometimes not. Sometimes they forget things. Sometimes they remember specific acts. In short, anything that victim of abuse does is consistent with the truth, according to Dr. Carmichael."

[11] Appellant also argues the prosecutor's argument "invited jurors to further misuse the CSAAS evidence to conclude that appellant had also sexually abused" Katrina P. However, in the cited argument from the prosecutor's rebuttal, he made no reference to the CSAAS evidence; indeed, he made no reference to CSAAS in the entire rebuttal. And Appellant cites no authority it was misconduct for the prosecutor to postulate various reasons why, as he argued, Katrina P. was untruthful. Finally, Appellant contends the prosecutor committed misconduct when he argued that, in

19

In any event, even if some of the prosecutor's arguments were improper for the reasons identified by Appellant (including those in footnote 11, *ante*), they were not so egregious or pervasive that " ' "it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct." ' " (*People v. Martinez* (2010) 47 Cal.4th 911, 955.)[12] Appellant asserts the present case was a "contest of witness credibility" between Jane Doe and Katrina P. However, Katrina P. did not directly contradict most of Jane Doe's testimony. Appellant asserts that Katrina P. testified she and Jane Doe visited Appellant when Katrina P. was between eight and nine, but Katrina P. testified she met Appellant when she was around 10. That meant Jane Doe had visited with Appellant for years before she did so with Katrina P.; Katrina P. had no direct knowledge regarding Jane Doe's allegations of abuse when Jane Doe was younger. That encompasses all the allegations of abuse, except for the allegations of hide-and-seek in the dark with Katrina P. and the incident where Jane Doe alleged Appellant touched her vagina with his mouth (when Katrina P. was not present). Also, although Katrina P. denied any inappropriate touching

"assess[ing] the credibility of Jane Doe's account," the jury should use "common sense" and consider "the information about his access to vulnerable children, his free access to multiple children in multiple places, accounting for what you know happened in Oregon, accounting for what you know is found in his trailer with those photographs . . . ." In context, it is clear the prosecutor was referring to the evidence corroborating Jane Doe's testimony; we reject Appellant's assertion the argument was improperly "calculated to inflame the jury and evoke anger and punitive impulses of jurors."

[12] Because any misconduct did not "comprise[] a pattern of conduct 'so egregious that it infect[ed] the trial with such unfairness as to make the conviction a denial of due process,' " any prejudice is analyzed under the state standard of *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Espinoza* (1992) 3 Cal.4th 806, 820–821.)

during the hide-and-seek games, because it was dark, it appears she lacked any direct knowledge of how Appellant touched Jane Doe during those games.

Finally, Appellant ignores that Jane Doe's account was strongly corroborated by the photographs found in Appellant's RV and by Jane Doe 3's testimony describing very similar sexual abuse—especially the game both Jane Doe and Jane Doe 3 described with a vibrating toothbrush and/or massager. The prosecutor emphasized that powerful corroborating evidence, and not the CSAAS evidence, in the closing portion of his rebuttal. Appellant has not shown there is a reasonable probability he was prejudiced by any prosecutorial misconduct.[13]

IV.  *Appellant is Not Entitled to Remand Under Assembly Bill No. 518*

Following Appellant's sentencing, effective January 1, 2022, section 654 was amended by Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill 518). (*People v. Mani* (2022) 74 Cal.App.5th 343, 379 (*Mani*).) "Previously, where . . . section 654 applied, the sentencing court was required to impose the sentence that 'provides for the longest potential term of imprisonment' and stay execution of the other term. (. . . § 654, former subd. (a).) As amended by Assembly Bill 518, . . . section 654 now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence." (*Mani*, at p. 379.)

At issue in the present appeal is the trial court's application of section 654 to counts six and seven. The court imposed a 15-years-to-life sentence on count six, sexual penetration with a child aged 10 years or

---

[13] Appellant argues for reversal under the cumulative error doctrine, but we have not found multiple errors to be considered cumulatively.

younger (§ 288.7, subd. (b)), and stayed a two-year sentence (one-third the middle term of six years) on count seven, committing a lewd or lascivious act upon a child under the age of 14 years (§ 288, subd. (a)). Appellant contends this case must be remanded to allow the trial court an opportunity to exercise its newly granted discretion whether to impose the sentence under count six *or* count seven. The parties agree Assembly Bill 518 is retroactive. (*Mani, supra*, 74 Cal.App.5th at pp. 379–380.) However, respondent argues section 1203.065, subdivision (a) prohibits the trial court from staying the execution of sentence for count six.

Section 1203.065, subdivision (a) provides, in pertinent part, "Notwithstanding any other law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, a person who is convicted of violating . . . Section 288.7 . . . ." Respondent cites *People v. Caparaz* (2022) 80 Cal.App.5th 669, 689 (*Caparaz*), for the proposition that "a stay is type of suspension; thus, a prohibition against suspending a sentence necessarily prohibits the stay of a sentence." Respondent then argues, "What section 1203.065, subdivision (a) means is: A trial court is prohibited from staying the execution of sentence for a violation of section 288.7 (count 6 here) notwithstanding any other law, including section 654."

We agree. The decision in *Caparaz, supra*, 80 Cal.App.5th 669, is directly analogous. There, the Attorney General argued that remand for resentencing under Assembly Bill 518 was unnecessary because the superior court was without discretion to stay punishment mandated by the "One Strike" law, which applied to the count for which the sentence was not stayed. (*Caparaz*, at p. 688.) The Attorney General relied on section 667.61, subdivision (h) of the One Strike law, which provides, "Notwithstanding any other law, probation shall not be granted to, nor shall the execution or

22

imposition of sentence be suspended for, a person who is subject to punishment under this section." (*Caparaz*, at p. 689.) The Court of Appeal stated, "When a defendant is convicted of two offenses for which section 654 prohibits multiple punishment (as is the case here), the trial court imposes sentence for one of them, and then imposes and stays the sentence for the other offense. [Citation.] A stay is a type of suspension. [Citation.] The Attorney General argues section 667.61[, subdivision ](h) means a trial court is prohibited from suspending or staying the imposition of a One Strike law sentence notwithstanding any other law, including section 654." (*Caparaz*, at p. 689.) The Court of Appeal agreed, concluding it was unnecessary to remand because the trial court had "no discretion to suspend or stay the One Strike law sentence . . . in favor of the shorter non-One Strike law sentence . . . notwithstanding the amendment to section 654." (*Caparaz*, at p. 690.)

The operative language in section 667.61, subdivision (h), at issue in *Caparaz*, is identical to that in section 1203.065, subdivision (a), at issue in the present case. Accordingly, employing the same reasoning as in *Caparaz*, it is unnecessary to remand for resentencing because the trial court would have no discretion to stay the sentence on count six. In response, Appellant does not dispute that the statute at issue in *Caparaz* is directly analogous to that at issue in the present case. Instead, Appellant argues the *Caparaz* court erred because a 1986 decision cited therein for the meaning of "stay," *People v. Santana* (1986) 182 Cal.App.3d 185, concluded the "stay" of an enhancement had the "functional effect" of striking the enhancement. *Santana* is inapposite; the issue in that case was whether to treat the trial court's order purporting to "stay" the enhancement as an order "striking" the enhancement for purposes of appellate review. (*Santana*, at pp. 190–192.) We reject Appellant's argument that a stay under section 654 is equivalent to

23

striking the count—the stayed count can be "resurrected" (*Santana*, at p. 191) if, for any reason, the unstayed sentence is reversed or vacated. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1469.) In any event, a stay of the sentence on count six under section 654 is prohibited by the plain language of section 1203.065, subdivision (a), regardless of whether a court might conclude the stay is functionally equivalent to striking the count.

It is unnecessary to remand for resentencing because the trial court is without authority to stay the sentence on count six.[14]

## V.     *Appellant is Entitled to Resentencing Under Senate Bill 567*

Appellant contends this case must be remanded for resentencing because a change in law subsequent to his sentencing hearing has rendered his upper term sentence unlawful. At the time Appellant was sentenced, "section 1170, subdivision (b), gave the trial courts broad discretion to decide which of the three terms specified for an offense would best serve the interests of justice. (See § 1170, subd. (b), as amended by Stats. 2020, ch. 29, § 14.) Effective January 1, 2022, [Senate Bill 567] amended section 1170, subdivision (b), in a number of respects, one of which was to make the middle term of imprisonment the presumptive sentence. (See § 1170, subd. (b)(2), as amended by Stats. 2021, ch. 731, § 1.3.) Under the amended statute, 'When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2).' (§ 1170, subd. (b)(1).)" (*People v. Wandrey* (2022) 80 Cal.App.5th 962, 981 (*Wandrey*); see also *People v. Flores* (2022) 73

---

[14] We need not and do not address respondent's additional contention that remand would be futile because it is clear the trial court would not elect to stay the sentence on count seven instead of the sentence on count six, if it did have the authority to do so.

24

Cal.App.5th 1032, 1038 (*Flores*).) Under the amended version of section 1170, subdivision (b)(2), a trial court may impose the upper term only if "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial . . . ."

Appellant contends he is entitled to resentencing under Senate Bill 567 because "[w]hen the [trial] court sentenced [A]ppellant, it imposed upper terms based on aggravating factors that had not been found true beyond a reasonable doubt at trial or admitted by [A]ppellant." Respondent properly concedes the amended version of section 1170, subdivision (b) "applies retroactively in this case as an ameliorative change in the law applicable to all nonfinal convictions on appeal." (*Flores*, *supra*, 73 Cal.App.5th at p. 1039.) In *Lynch*, the California Supreme Court held that, following the Senate Bill 567 amendments, a Sixth Amendment violation occurs when a trial court relies on *any* improperly proven aggravating circumstance to impose an upper-term sentence. (*Lynch*, *supra*, 16 Cal.5th at p. 761.) The Court held that remand for resentencing is required "unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified." (*Id.* at p. 743.) Additionally, remand is required unless the record "clearly indicate[s] that the court would have found an upper term justified had it been aware of its more limited discretion." (*Ibid.*, citing *People v. Gutierrez* (2014) 58 Cal.4th 1354 (*Gutierrez*).)

25

In the present case, at sentencing the trial court relied on four aggravating factors in imposing the upper term for the lewd act charged in count one: (1) Jane Doe was "particularly vulnerable"; (2) "the manner in which the crimes were carried out suggests planning over a long period of time"; (3) Appellant abused "a position of trust and confidence"; and (4) Appellant "use[d] obscene material to encourage Jane Doe to engage in . . . behavior."[15]  Although the jury did not find those circumstances true beyond a reasonable doubt, Appellant fails to explain how the jury could have failed to do so had they been asked to do so.  As respondent argues, the jury " 'unquestionably' " (*Wandrey*, *supra*, 80 Cal.App.5th at p. 982) would have found *all* of those circumstances true beyond a reasonable doubt.  In particular, given the corroborating physical and testimonial evidence and the jury's acceptance of Jane Doe's account, there is *no* doubt the jury would have found that Jane Doe was particularly vulnerable, that Appellant engaged in extensive planning, that Appellant abused a position of trust, and that Appellant used obscene material to groom Jane Doe.  (See *Lynch*, *supra*, 16 Cal.5th at p. 743.)

Nevertheless, as Appellant argues, the Supreme Court in *Lynch* also held that, even if a jury would have found true the aggravating facts the trial court relied upon, remand for resentencing is still required unless the record "clearly indicate[s] that the court would have found an upper term justified

---

[15] Appellant asserts the trial court relied on a finding of Appellant's callousness as an aggravating circumstance.  But, although the trial court did say Appellant's acts showed callousness, it expressly declined to rely on the relevant aggravating factor—that "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness."  (Cal. Rules of Court, rule 4.421(a)(1).)

had it been aware of its more limited discretion." (*Lynch*, *supra*, 16 Cal.5th at p. 743.) In particular, at the time Appellant was sentenced, "former section 1170[, subdivision ](b) gave a sentencing court broad discretion to select among three terms and impose a sentence that in its judgment served the interests of justice. [Citation.] The current statute narrows that authority by creating a presumption against the upper term, which may be overcome only if the required facts are properly proven and the court concludes that term is justified. These changes circumscribe the trial court's previously broad discretion to select whichever of the three terms of imprisonment serves the interests of justice." (*Lynch*, at p. 773.) In the present case, Appellant argues remand for resentencing is required because the record below does not clearly indicate the trial court would have imposed the same sentence "had it been aware of its more limited discretion." (*Id.* at p. 743.) In its supplemental brief, respondent concedes remand is appropriate. We agree the record does not satisfy the *Gutierrez* test of harmless error,[16] and we remand for resentencing. (See *Lynch*, at p. 774 ["In this circumstance, 'it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing' "].)

## DISPOSITION

The matter is remanded to the trial court for resentencing consistent with the current version of section 1170, subdivision (b) and the California

---

[16] The record shows that, after the trial court identified the applicable aggravating and mitigating factors, the court stated only, "The [c]ourt again for the reasons just stated finds that the terms in aggravation outweigh the terms in mitigation and therefore mandate a[n] aggravated term in this case."

27

Supreme Court's decision in *Lynch*, *supra*, 16 Cal.5th 730. In all other respects, the judgment is affirmed.

SIMONS, Acting P.J.

We concur.

BURNS, J.
CHOU, J.

(A160769)