Filed 6/9/25  P. v. Watkins CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F080436 |
| Plaintiff and Respondent, | (Super. Ct. No. F14909870) |
| v. | |
| CHRISTOPHER WATKINS, | **OPINION** |
| Defendant and Appellant. | |

## THE COURT\*

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan M. Skiles, Judge.

Spolin Law, Aaron Spolin; James S. Thomson, Ethan H. Stone, Laura A. Douglas; Law Office of Jennifer M. Sheetz, Jennifer M. Sheetz; Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Kimberley A. Donohue, Dina Petrushenko, Stephanie A. Mitchell, and Brook A. Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, Acting P. J., Smith, J. and Snauffer, J.

## INTRODUCTION

This matter is before us on transfer from the Supreme Court for reconsideration in light of *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*) and *People v. Salazar* (2023) 15 Cal.5th 416 (*Salazar*). (See Cal. Rules of Court, rule 8.528(d).) *Lynch* and *Salazar* settled a division among courts of appeal on the appropriate standard for assessing prejudice in the context of noncompliance with the requirements of Penal Code[1] section 1170, subdivision (b), as modified by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567) (Stats. 2021, ch. 731, § 1.3) and clarified the circumstances under which remand and resentencing are required. In accordance with the Supreme Court's order, we have vacated our earlier decision, and the parties have submitted supplemental briefing.

A jury convicted Christopher Watkins of rape by force (§ 261, subd. (a)(2); count 1), criminal threats (§ 422; count 2), and dissuading a witness by force or threats (§ 136.1, subd. (c)(1); count 3). The trial court sentenced Watkins to 11 years in state prison.

On appeal, Watkins challenges the denial of his pretrial motion to sever, the sufficiency of the evidence to support his rape conviction, the admissibility of an audio recording in which he is identified by the victim, and the trial court's ruling allowing the victim's husband to both serve as her support person and testify as a witness. We conclude no error occurred, or that any error was harmless.

Watkins also claims the matter should be remanded for resentencing in light of Senate Bill No. 567, which was enacted while the instant appeal was pending. In our prior opinion, we concluded the trial court's noncompliance with Senate Bill No. 567 was harmless error. Following consideration of *Lynch*, *Salazar*, and the parties' supplemental briefs, we have concluded Watkins nonetheless is entitled to a remand and resentencing, because the record does not "clearly indicate" the trial court would have imposed the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

same sentence had it been aware of Senate Bill No. 567's presumption against the upper term. (*Lynch, supra,* 16 Cal.5th at p. 743.) Accordingly, we vacate Watkins's sentence and remand the matter for resentencing. In all other respects, we affirm.

## BACKGROUND

Watkins's charges were based on the allegations of two victims in unrelated incidents. One of the victims, the daughter of Watkins's former girlfriend, was a minor at the time of the alleged crime. As we explain below, after the minor testified, the trial court granted the People's motion to dismiss the associated charge for insufficient evidence.

Watkins's other victim was Jane Doe, an employee at Watkins's appliance store. She began working for Watkins in Spring 2014. Watkins's wife was the only other employee at the store.

On October 8, 2014, Doe was at work in the store when Watkins asked her to go with him to the storage room to help him find something. Doe responded that she needed to head home soon, but Watkins assured her it would be quick. She agreed and followed him to the storage room, and Watkins closed the door behind them.

Once inside, Watkins told Doe she did not need to come into work next week, explaining that his wife was in Las Vegas, and he was going to meet her there. He then asked for a hug. Doe did not find this unusual, as she often gave Watkins and his wife a hug when she left work for the day. However, this time when she hugged Watkins, he put both hands around her waist and asked her to kiss him. He had never done that before. Doe began to cry. She refused to kiss Watkins, pushed him away, and moved toward the storage room door. Before she reached the door, Watkins grabbed her from behind, put his hands over her mouth such that she could not scream and said " 'It's okay. It's okay.' " He then put his forearm against her throat and used his other hand to reach into her pants. Doe told Watkins, " 'No, please don't' " and struggled to get away, but she was unable to resist Watkins, who was six feet, two inches tall, and weighed 340 pounds.

3.

At some point during the struggle, Doe fell to the floor and ended up on her back. Watkins got on top of her and pulled off her pants and underwear. She screamed, but Watkins put his hand over her mouth and told her to "shut up." She tried to get up, but Watkins pushed her back down. She told Watkins, " 'Please don't do this to me,' " but he did not respond. She felt "frozen" and could not fight back because she was scared Watkins would hurt her. Watkins kissed her on the lips and put his tongue in her mouth. She then felt his penis inside of her vagina. She continued to cry and told Watkins, " 'Please, let me go,' " but he did not stop. Watkins ejaculated inside of her.

Once Doe was able to stand, she rushed to get dressed. Watkins approached Doe and pushed her against a wall, put his hand on her throat and squeezed, and told her not to tell anyone about what happened. He threatened to harm her husband and child, telling her he knows where they live, and that she does not " 'want to see them get hurt.' " He also told her she " 'better not tell the police because I know somebody there.' " He squeezed her neck harder and told her to " '[m]ake a promise,' " and Doe nodded her head to indicate she would not say anything. Watkins then told Doe to bring her time sheet with her to work the next day, which was her normal payday, and that he would bring birth control for her.

Doe ran out of the building and to her car where she called her husband. She did not call the police because she was scared Watkins would harm her family. She was so distraught she could not talk and told her husband she would meet him at his office. Doe's husband testified that when she arrived, she was sobbing uncontrollably and having a hard time walking. Two of Doe's husband's co-workers who were present at the office when Doe arrived provided a similar description of her demeanor and mental state. Doe also had difficulty talking but was eventually able to communicate that Watkins raped her.

Doe's husband took Doe to the hospital. On the way there, Doe continued to cry and was "curled up into a little ball." At the hospital, Doe was interviewed by a police

4.

officer, who described her demeanor as "extremely distraught" and "visibly disturbed." Doe also met with a nurse who performed a SART exam during which swabs were taken from her person for DNA examination.

The swabs were examined by a criminalist from the California Department of Justice, Bureau of Forensic Sciences. The criminalist testified he detected semen on the swabs from Doe's vagina and anus. He compared the DNA detected on each swab to a reference sample from Watkins and opined that there was "extremely strong evidence" that Watkins was the source of some of the DNA. He explained that the DNA profile from the swabs was 40 quintillion times more likely to have originated from Watkins than a random unrelated person in the African-American population.

Photographs of Doe's body were taken by police officers and by Doe's husband. The photographs showed several minor injuries, including abrasions and bruising on her arms, legs, and torso. She also experienced pain and bleeding from her vagina for several days after the rape.

Doe testified that prior to the rape, Watkins had never been violent with her, and their relationship was never sexual. The month before the assault, Watkins gave Doe a cash bonus for doing a good job at work. He also took her to get her nails done as a reward. She testified that she and her husband had been having money problems when she worked for Watkins, but that she never asked Watkins for extra money.

## DISCUSSION

I. **Watkins abandoned his pretrial motion to sever and has forfeited the claim on appeal. Any presumed error was harmless.**

In addition to counts 1 through 3, which pertained to the rape of Doe, the People charged Watkins with sexual penetration of a minor 14 years of age or older (§ 289, subd. (a)(1)(C); count 4). As noted above, count 4 pertained to the alleged sexual assault of Watkins's former girlfriend's daughter. The minor testified at trial, but after the People

5.

concluded their direct examination, the trial court granted the People's motion to dismiss count 4 for insufficient evidence and struck the minor's testimony.

Watkins contends the trial court erred in failing to grant his pretrial motion to sever count 4. He argues the minor's testimony was inadmissible propensity evidence involving such highly inflammatory allegations that the resulting prejudice could not be cured by the trial court's admonition not to consider the testimony.

## A. Background

### 1. Watkins's Motion to Sever

Watkins filed the motion to sever on March 7, 2016, approximately three and a half years before his case proceeded to trial. When the motion was filed, Watkins was represented by attorney Mark Broughton. At a March 10, 2016 settlement conference, Watkins's counsel informed the court the parties were "in a position … to settle at this point." The parties agreed to vacate a previously set jury trial date and continue the matter for a further settlement conference on April 7, 2016. The court granted Watkins's request to continue the motion to sever to that date as well.

Over the next eight months, the motion to sever was continued eight times. At a settlement conference on December 1, 2016, when the parties agreed to continue a previously set trial date in light of new discovery, the trial court told Watkins, "[t]he motion is just going to trail at this point," and Watkins's counsel agreed.

There is no further mention of the motion to sever in the record. In November 2017, attorney Scott Kinney substituted in for attorney Broughton. Watkins's motions in limine, filed August 29, 2019, included no reference to the motion to sever.

### 2. Minor's Testimony

The minor was 20 years old when she testified at trial. When she was younger, Watkins and her mother were in a dating relationship, and Watkins lived at their house.

The minor testified Watkins engaged in sexual conduct with her more than a dozen times between fourth grade and her sophomore year in high school. When the minor was

around 11 years old, Watkins asked her to pull up her shirt and expose her body to him, and she did.  When she was 12 or 13 years old, Watkins took photographs of her bare chest, then told her to masturbate him, which she did.  When she was a freshman in high school, Watkins touched her vagina.  After these incidents, Watkins would tell her that she should not tell anyone because she would get in trouble and gave her money so she would not say anything.

The last incident occurred when the minor was 13 or 14 years old.  Watkins came into her room around 3:00 a.m., laid on top of her, put his hand over her mouth and told her to be quiet.  He told her someone had broken into the house, then took her cell phone. He led her to her mother's bedroom, locked the door behind him, and pushed her onto the bed.  She started crying and asking for her mother and for her cell phone, but Watkins told her to stop crying and to be quiet.  He pulled his pants down and directed her to orally copulate him, and she complied.  He then went to the bathroom and retrieved a white vibrator.  He put the vibrator "on" her vagina, but she specified it did not go inside of her vagina.  At this point, the minor's younger sister, who was asleep in the crib in the bedroom, woke up.  Watkins pulled up his pants and the minor returned to her room.

The minor told her mother about the abuse after the last incident, but her mother did not contact law enforcement and told her not to say anything.  Several months later, the minor told her grandmother about the abuse, and the grandmother reported it to law enforcement.

The minor acknowledged she told two "investigators" who came to her school that Watkins put his finger in her vagina but testified that Watkins never committed that specific act.  The minor testified she was not truthful about this with the investigators because she "just wanted to keep it short in reference to what I guess actually happened." She confirmed that she had no recollection of an incident where Watkins put his finger in her vagina.

Following direct examination, the People moved to dismiss count 4 for insufficient evidence because there was no evidence of penetration. The trial court granted the motion. The trial court explained that the minor's testimony involved "a denial of the conduct that was documented [in] the reports, and then bringing forward new conduct that was not included in the report," and that the "oral copulation allegations came as a surprise to both the People and defense." However, it ruled that the minor's testimony was inadmissible as propensity evidence under Evidence Code section 1108 for lack of adequate notice. It also ruled the testimony was inadmissible under Evidence Code section 352. Accordingly, it ordered the minor's testimony stricken.

Upon resumption of the trial, the trial court admonished the jury as follows:

"And before we begin, a couple things. At this point [c]ount 4, which was the sexual penetration by force of a minor, that count is no longer going to be something that you're going to be required to deliberate on and return a verdict for. Please don't speculate as to why. It is just a count that you're no longer going to have to consider. And because of that, the [c]ourt is striking the testimony that was given on Monday of [the minor] since that is the count that relates to [the minor]."

**B. Watkins abandoned the motion to sever, forfeiting appellate review.**

As a threshold matter, respondent contends Watkins's failure to press for a ruling for over three and a half years on his motion to sever forfeits his claim on appeal. We agree. The "failure to press for a ruling waives the issue on appeal." (*People v. Cunningham* (2001) 25 Cal.4th 926, 984; see *People v. Valdez* (2012) 55 Cal.4th 82, 142-143 ["Thus, because defendant failed to press the trial court for a ruling on [the unavailability of a witness], he may not raise the issue on appeal."]; *People v. Lewis* (2008) 43 Cal.4th 415, 481 ["Failure to press for a ruling on a motion to exclude evidence forfeits appellate review of the claim because such failure deprives the trial court of the opportunity to correct potential error in the first instance."].)

Appellant asks that we reach the merits of his claim, relying on *People v. Champion* (1995) 9 Cal.4th 879. There, our high court exercised its discretion to reach the merits of the defendants' claim the trial court should have granted their motion to limit the scope of voir dire in a capital case, and "[a]ssum[ed] for the sake of argument that defendants have preserved their right to raise the issue." (*Id.* at p. 908.) In a footnote, the court explained it was declining to address the "close and difficult" question of forfeiture, noting that it was unclear from the record whether one defendant had abandoned the motion, and whether the other defendant had joined in it. (*Id* at p. 908, fn. 6.)

Here, we do not find the question of forfeiture to be close or difficult. Watkins had ample opportunity to press the trial court for a ruling and failed to do so. The motion to sever was continued numerous times at Watkins's request. The last reference to the motion to sever in the record is in December 2016, when Watkins agreed the motion would "trail." No effort was made to revive the motion despite the People filing two amended informations and Watkins filing a motion to set aside parts of the information (§ 995). Although Watkins's initial trial counsel substituted out of the case, he did so over a year after he filed the severance motion. Watkins's new trial counsel represented him for almost two years before trial and failed to address the severance motion at any point, including in his motions in limine. Given this record, the only reasonable conclusion is that Watkins abandoned his motion to sever, and therefore has not preserved the claim on appeal.

## C. Any presumed error was harmless.

Even if Watkins had not forfeited his claim, we would conclude, without reaching the merits of the severance motion, that any presumed error was harmless. The erroneous denial of a motion to sever warrants reversal " ' "only upon a showing that, to a reasonable probability, the defendant would have received a more favorable result in a separate trial." ' " (*People v. Flinner* (2020) 10 Cal.5th 686, 713; *People v. Pinholster*

9.

(1992) 1 Cal.4th 865, 931-932, disapproved on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459.)

Watkins has not made such a showing. We agree with Watkins that allegations of child sexual assault are inherently inflammatory. However, the evidence establishing Watkins's guilt of the charges pertaining to Doe was overwhelming. (See *People v. Thompson* (2016) 1 Cal.5th 1043, 1091 ["Moreover, even were we to conclude the trial court abused its discretion in denying severance, the evidence of defendant's guilt was overwhelming…. Consequently, those rulings did not prejudice defendant or otherwise result in an unfair trial."].) The DNA evidence conclusively established that Watkins had sexual intercourse with Doe. Doe's testimony that Watkins raped her was clear, logical, internally consistent, and corroborated by her physical injuries. The testimony of Doe's husband, his two coworkers, and the officer who interviewed her, credibly established that Doe was emotionally distraught, consistent with her having just been sexually assaulted. Moreover, Doe had no reason to falsely accuse Watkins of rape. While Watkins's counsel suggested Doe and her husband were trying to extort Watkins for money, there was no evidence to support this claim.

To the extent the minor's testimony prejudiced Watkins, it was mitigated by the actions of the court and counsel. After the trial court dismissed count 4, it ordered the minor's testimony stricken in front of the jury and admonished them not to speculate why the count had been dismissed. Thereafter, no further evidence was presented regarding count 4. Counsel did not address the minor's testimony in their closing argument, and the court did not instruct the jury on evidence of uncharged sex offenses. (See CALCRIM No. 1191A.)

Considering the limited prejudice in conjunction with the overwhelming evidence of guilt, we conclude there is no reason to attribute the jury's guilty verdict to the minor's testimony. Therefore, we find there is no reasonable possibility Watkins would have received a more favorable result in a separate trial, and any presumed error was harmless.

10.

## II. Watkins's rape conviction was supported by substantial evidence.

During the rape, Doe suffered several bruises and small abrasions to her legs, arms, and torso. Watkins contends that the lack of more significant physical injuries makes her testimony "inherently improbable," and therefore the rape conviction was not supported by sufficient evidence. He argues that because he is a large man and the rape occurred on carpet, she should have received extensive carpet burns on her back and elbows. He also claims that if Watkins choked her on several occasions, she should have had marks on her neck.

"To determine the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the prosecution to determine whether it contains [substantial] evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955 (*Tripp*).) We "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) "We need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether ' "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*Tripp, supra*, at p. 955, italics omitted.)

We conclude the rape conviction was supported by substantial evidence. The verdict demonstrates the jury found Doe credible, and as we explain above, that finding was supported by overwhelming evidence. We also find Doe's relatively minor physical injuries consistent with her description of the assault. Doe struggled initially when Watkins grabbed her from behind, but she stopped resisting soon after she fell to the floor out of fear that he would harm her further. Based on her description of Watkins's conduct, we would not expect her to have received more than minor abrasions and bruising on her arms, legs, and torso. Nor would we expect her to have necessarily received injuries to her neck area from Watkins grabbing her by the throat. Accordingly,

11.

considering the totality of the evidence, any rational trier of fact could have found Watkins guilty beyond a reasonable doubt, and this claim lacks merit.

### III. The trial court did not err in admitting the audio recording of Doe identifying Watkins.

The trial court admitted a brief audio recording of Doe identifying Watkins to law enforcement as the person who raped her earlier that day. Watkins contends the trial court should have excluded the recording under Evidence Code section 352.

#### A. Background

The audio recording is of a conversation over the phone between Doe and an investigating officer on the day of the rape. After officers detained Watkins, they contacted Doe to confirm they had detained the right person. An officer sent a photograph of Watkins to Doe's husband via text message, then spoke with Doe over the phone and asked Doe's husband to show her the photograph. Doe then identified Watkins as the person who raped her. Doe was emotional throughout the entire call and broke down crying several times.

The People moved in limine to admit the audio recording as a prior identification pursuant to Evidence Code section 1238. The People also noted that during the recording Doe is "still very emotional and distraught, especially upon seeing the photo of [Watkins]." Watkins objected, arguing that identification was not at issue, so the only relevance of the call was to show that Doe was emotional. The trial court ruled the recording could be admitted, reasoning that identification is relevant, and "unless there is something more than just emotion, the court doesn't believe the prejudicial impact outweighs the probative value."

#### B. Standard of Review

Evidence Code section 352 allows a trial court to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue

12.

prejudice, of confusing the issues, or of misleading the jury." "The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." (*People v. Karis* (1988) 46 Cal.3d 612, 638.) " 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' " (*Ibid.*) The trial court's exercise of discretion under Evidence Code section 352 will not be disturbed on appeal absent a clear abuse of discretion. (*Id.* at p. 637.)

### C. Evidence Code section 352 did not require exclusion.

Watkins does not dispute that the recording was properly admitted as a prior identification (Evid. Code, § 1238), but claims it was prejudicial because it showed Doe's level of emotional distress. We disagree. Doe's demeanor and mental state while speaking to the officer were highly relevant to her credibility, particularly given that she was assaulted earlier that day. Moreover, Watkins's defense was that he had consensual sex with Doe and her testimony that he raped her was a lie, so any evidence allowing the jury to further assess Doe's credibility is highly probative. Like the testimony of Doe's husband's co-workers, who described Doe as being emotionally distraught upon her arrival to the office, the recording was relevant to show that Doe's emotional response was not contrived, but rather was a genuine reaction to having suffered a violent sexual assault. Therefore, the trial court did not abuse its discretion in admitting the recording over Watkins's Evidence Code section 352 objection.

### IV. The trial court erred in allowing Doe's husband to serve as her support person before testifying, but the error was harmless.

The trial court allowed Doe's husband to serve as her support person during her testimony. Watkins contends the trial court erred by allowing Doe's husband to testify

13.

after watching Doe testify, and that it failed to properly admonish Doe's husband not to communicate with Doe during her testimony. Respondent concedes the trial court erred, but contends any presumed error was harmless.

**A. Background**

The People moved in limine to allow Doe's husband to serve as her support person during her testimony. At the hearing on the motion, the People argued that Doe is still very emotional and has relied heavily on her husband for support. The trial court expressed concern that Doe's husband testified before Doe, he may have to be recalled later in trial. As an alternative to Doe's husband serving as a support person, the trial court suggested he wait outside the courtroom during her testimony, and that she could take breaks to talk to him as needed.

Doe began her testimony without her husband present in court. When Doe's testimony reached the point where she was asked to describe specific details of the rape, she asked for a break. During the break and outside of the presence of the jury, the trial court ruled Doe's husband could serve as her support person, stating:

> "What I'm putting on the record will be over the objection of the defense, but given the nature of the testimony so far, the need for breaks due to some – I'm not questioning being understandable, but emotions, I'm going to be changing my ruling allowing this witness's husband to be in the courtroom for her testimony, even though he is also going to be called later as a witness. I am making an order that neither the witness nor her husband is to discuss the facts and circumstances of the case itself with each other, but he can certainly be in here as a support person, and that is over the objection of the defense."

Watkins's counsel requested the trial court admonish Doe and her husband that they were "not to look at, or no hand signals or any communication between the two, verbal or otherwise." The trial court replied that if it "[saw] something that, [it] would intervene." It is unclear from the record if Doe or her husband were present in court for the trial court's ruling or the request for an admonition.

14.

Doe's husband remained in court for the remainder of Doe's testimony. Doe's husband was then called by the People as their next witness.

**B.  The trial court violated section 868.5.**

Section 868.5, subdivision (a), states that a "prosecuting witness" in a case involving certain enumerated offenses, including rape, is entitled to a support person during his or her testimony. Subdivision (c) specifies that if the support person is also a witness, the testimony of the support person "shall be presented before the testimony of the prosecting witness." Additionally, subdivision (b) mandates that "[i]n all cases, the judge shall admonish the support person … to not prompt, sway, or influence the witness in any way."

We agree with the parties that the trial court violated section 868.5, subdivision (c) by allowing Doe's husband to serve as her support person and then testify as a witness. While it appears the trial court was moved to change its ruling by the traumatic nature of Doe's testimony, Doe was already on the stand, so there was no way Doe's husband would be able to testify before her. We also agree the trial court failed to properly admonish Doe and her husband in accordance with subdivision (b). The trial court indicated it would not allow Doe and her husband to communicate during Doe's testimony, but it was unclear if Doe and her husband were present when it made that statement, and even so, the language of the statement fell short of the admonition required by the statute.

**C.  The error was harmless.**

Respondent contends the trial court's errors pertaining to Doe's husband's role as a support person were harmless. We agree.

Depending upon the basis of the claimed error, it is reviewed under either *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*), or *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). Under the more stringent *Chapman* standard, which applies to errors of constitutional dimension, reversal is required unless the reviewing court can

15.

conclude beyond a reasonable doubt that the error did not contribute to the verdict. (*Chapman*, supra, 386 U.S. at p. 24.) Under the alternative *Watson* standard, which applies to errors of state law, reversal is not required unless it is reasonably probable the defendant would have obtained a more favorable result had the error not occurred. (*Watson*, supra, 46 Cal.2d at p. 836.)

We need not decide whether the *Chapman* or *Watson* standard for prejudicial error applies here because the error was harmless under either standard. "The requirement that the support person testify before and out of the presence of the victim is intended to guard against the possibility that the support person will tailor his or her testimony to match that of the complaining witness." (*People v. Redondo* (1988) 203 Cal.App.3d 647, 654.) Nothing in the record suggests that Doe's husband altered his testimony based on the testimony of his wife, or that appellant's ability to cross-examine Doe or her husband was undermined. The jurors were aware that Doe's husband was present for Doe's testimony and were able to take that into consideration when assessing his credibility. The jurors were also able to consider that Doe and Doe's husband are married. Moreover, Doe's husband's testimony was limited to Doe's demeanor and mental state following the rape and was corroborated by the testimony of his co-worker and members of law enforcement.

The trial court's failure to properly admonish Doe and her husband was similarly harmless. The trial court expressed that it would not allow Doe and her husband to communicate while testifying, suggesting it would be watching for such conduct. However, the trial court did not intervene at any point, and Watkins does not claim Doe's husband did anything to influence her testimony.

Considering the overwhelming evidence of Watkins's guilt and Watkins's failure to show he was prejudiced by the trial court's failure to comply with section 868.5, we find beyond a reasonable doubt that the error did not contribute to the verdict, and thus was harmless.

16.

## V. Cumulative Error

Watkins raises a claim of cumulative error. He contends that, based on the totality of some of the errors identified above, he suffered a fundamentally unfair trial. We disagree.

"Under the 'cumulative error' doctrine, errors that are individually harmless may nevertheless have a cumulative effect that is prejudicial." (*In re Avena* (1996) 12 Cal.4th 694, 772, fn. 32.) A claim of cumulative error is essentially a due process claim. (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1436.) The test is whether the defendant received a fair trial. (*Ibid.*)

We reject Watkins's claim of cumulative error because we have denied all of his individual claims. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1057 [cumulative prejudice argument rejected because each individual contention lacked merit or did not result in prejudice].) Taking all of appellant's claims into account, we are satisfied that he received a fair adjudication regarding his guilt for the rape of Doe.

## VI. Watkins is entitled to a remand and resentencing because the record does not clearly indicate the trial court would have imposed the same sentence had it been aware of its more limited discretion under Senate Bill No. 567.

While the instant appeal was pending, the Legislature enacted Senate Bill No. 567, which amended section 1170 such that a sentencing court may only impose the upper term where factors in aggravation have been found true beyond a reasonable doubt by the jury or the court or stipulated to by the defendant. The parties agree Senate Bill No. 567 applies retroactively to Watkins's case, as it is not final on appeal. (See *Lynch, supra,* 16 Cal.5th at p. 749.)

Watkins contends he must be remanded for resentencing because the record does not clearly indicate the trial court would have imposed the same sentence had it been aware of Senate Bill No. 567's presumption against the upper term. We agree.

17.

## A. Background

The trial court sentenced Watkins to 11 years in state prison as follows. On count 1, it imposed the upper term of eight years. On count 2, it concluded sentence must be stayed pursuant to section 654, ruling that it "could be viewed as part of either" count 1 or count 3. On count 3, it imposed a consecutive full middle term of three years pursuant to section 1170.15. This was the maximum possible sentence authorized by law.

The trial court elected to impose the upper term on count 1 based on the aggravating circumstance that Watkins "took advantage of a position of trust or confidence to commit the offense." (Cal. Rules of Court, rule 4.421(a)(11).) The court explained its reasoning as follows:

> "Well, basically, when it comes to balancing the factors, on the one hand, there is the lack of criminal history, but on the other hand, there was the abuse of a position of trust. This was not something where it was a random stranger or something that occurred on a date. Not minimizing either of those two circumstances, this was somebody who was going to work in a place, where she had an expectation and a right to feel safe, and then, in turn, was raped by her employer. So the court does believe that aggravating factor outweighs the mitigating factor of a lack of criminal history."

Because Watkins was sentenced in 2019, over two years before Senate Bill No. 567 went into effect, he was not afforded a jury trial on the truth of this aggravating circumstance, as is now required by section 1170, subdivision (b)(2).

## B. Watkins is entitled to a remand and resentencing.

When Watkins was sentenced in 2020, former section 1170 gave the trial court "broad discretion to select among three terms and impose a sentence that in its judgment served the interests of justice." (*Lynch, supra,* 16 Cal.5th at p. 773.) Effective January 1, 2022, Senate Bill No. 567 placed limits on the discretion to impose the upper term. (§ 1170, subd. (b)(1) & (b)(2).) Section 1170, subdivision (b)(2) now specifies that a sentencing court may impose the upper term "only when there are circumstances in

aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." Thus, Senate Bill No. 567 narrowed the trial court's discretion "by creating a presumption against the upper term, which may be overcome only if the required facts are properly proven, and the court concludes that term is justified." (*Lynch, supra,* 16 Cal.5th at p. 773.)

*Lynch* holds that where a sentencing court imposed the upper term under a former version of section 1170, subdivision (b), the sentence must be vacated and the matter remanded for resentencing unless the record "clearly indicate[s] that the court would have found an upper term justified had it been aware of its more limited discretion." (*Lynch, supra,* 16 Cal.5th at p. 743.) More precisely, the record must "clearly indicate" that the court "would have found aggravating circumstances sufficiently weighty to 'justify' an upward departure from the legislative mandate for no more than a middle term sentence." (*Id.* at p. 777.)

Our high court has cautioned that in applying the "clearly indicates" standard, " 'it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing.' " (*Lynch, supra,* 16 Cal.5th at p. 776, quoting *Salazar, supra,* 15 Cal.5th at p. 425.) "Mere reliance on the length of the original sentence and attendant decisions, such as imposing consecutive sentences, imposing middle or upper term sentences, or declining to strike enhancements, is not sufficient to provide a clear indication of what a sentencing court might do on remand if it had been fully aware of the scope of its discretionary powers." (*Salazar, supra,* 15 Cal.5th at p. 431.) Accordingly, remand for resentencing is generally required unless the sentencing court clearly stated that "it would not impose a lesser sentence under any circumstances" (*Lynch, supra,* 16 Cal.5th at p. 777), or "announce[d] that it is aware of forthcoming legislation and then explain[ed]

19.

how it would exercise its discretion under that legislation" (*Salazar, supra,* 15 Cal.5th at p. 431).

Here, the trial court made no such definitive statements. Rather, it elected to impose the upper term based on its conclusion the aggravating circumstance that Watkins "took advantage of a position of trust or confidence to commit the offense" (Cal. Rules of Court, rule 4.421(a)(11)) outweighed the mitigating circumstance that Watkins had "no prior [criminal] record" (Cal. Rules of Court, rule 4.423(b)(1)). This does not provide a clear indication that the trial court would have imposed the upper term had it been aware of its more limited discretion under section 1170 as amended by Senate Bill No. 567. While respondent notes the trial court also exercised its discretion to impose a consecutive term on count 3, *Lynch* and *Salazar* make clear that such sentencing decisions are insufficient to determine how the trial court would have exercised its discretion under current law. (*Lynch, supra,* 16 Cal.5th at pp. 776-777; *Salazar, supra,* 15 Cal.5th at p. 431.) Accordingly, we conclude the record does not clearly indicate the trial court would have elected to impose the upper term "under the weight of the presumptive middle term maximum sentence that currently exists," and Watkins is entitled to a remand and resentencing.[2] (*Lynch, supra,* 16 Cal.5th at p. 777.)

To assist the court and parties on remand, we offer the following guidance from *Lynch*. The People may elect to try the truth of the aggravating circumstance that

---

[2] Watkins also contends that remand and resentencing are required because the record does not support the conclusion beyond a reasonable doubt that a jury would have found true the aggravating circumstance that Watkins "took advantage of a position of trust or confidence to commit the offense." (See *Lynch, supra,* 16 Cal.5th at p. 768.) We need not consider this claim because we determine the matter must be remanded for resentencing on another ground.

We emphasize, however, that Watkins was not afforded a jury trial on the truth of this aggravating circumstance. Accordingly, upon remand, the trial court may not rely upon this aggravating circumstance to justify an upper term unless it is properly proven in accordance with section 1170, subdivision (b).

20.

Watkins "took advantage of a position of trust or confidence to commit the offense" (Cal. Rules of Court, rule 4.421(a)(11)), and/or other aggravating circumstances set forth in the California Rules of Court. (See *Lynch, supra,* 16 Cal.5th at p. 777.) If one or more of the aggravating circumstances is properly proven in accordance with section 1170, subdivision (b), the trial court "retains its discretion to impose an upper term sentence if it concludes that one or more … circumstances justify such a sentence." (*Lynch, supra,* 16 Cal.5th at p. 778.) If the court "cannot so conclude, it may impose no more than a middle term for each of the counts on which [Watkins] stands convicted." (*Ibid.*)

## VII. On remand, Watkins may address the applicability of Assembly Bill No. 518 and Senate Bill No. 567.

Watkins also contends remand and resentencing are required pursuant to two other legislative enactments that became effective while the instant appeal was pending: Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill No. 518) (Stats. 2021, ch. 441, § 1), and Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Assembly Bill No. 124) (Stats. 2021, ch. 695, § 5). Assembly Bill No. 518 amended section 654, subdivision (a) to permit an act or omission punishable under two or more provisions of law to "be punished under either of such provisions." Assembly Bill No. 124 amended section 1170 to create a presumption in favor of the lower term if, inter alia, the defendant "has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6)(A).)

We need not address whether remand is required based on these enactments because we have already determined remand and resentencing are necessary. Because Watkins is entitled to a full resentencing, he may raise the applicability of these enactments below when he is resentenced. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425 ["[T]he full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"].)

21.

We take no position on how the trial court should exercise its sentencing discretion when it resentences Watkins.

## **DISPOSITION**

Watkins's sentence is vacated and the matter is remanded for a full resentencing in conformity with section 1170, subdivision (b).  The People may elect to try aggravating factors on remand or proceed to resentencing.  In all other respects, the judgment is affirmed.